883 A.2d 503

**Susan Silvonek FREUNDT, Appellee**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Supreme Court of Pennsylvania.

Resubmitted Feb. 24, 2005.

Decided Sept. 28, 2005.

284

Harold H. Cramer, Harrisburg, Terrance M. Edwards, Washington, DC, Andrew S. Gordon, Timothy Peter Wile, Harrisburg, for Bureau of Driver Licensing, appellant.

Holly Beth Conway, Robert M. Rosenblum, Stroudsburg, for Susan Silvonek Freundt, appellee.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Chief Justice CAPPY.

The question presented in this appeal is whether the suspension of driving privileges provision at 75 Pa.C.S. § 1532(c) requires the imposition of separate suspensions for each individual violation of specified drug offenses in the Crimes Code, or a single suspension for a first criminal episode. We find that this provision requires the imposition of a single suspension for a first criminal episode. For the following reasons, therefore, we affirm the Commonwealth Court's Order.

The background information relevant to the disposition of this appeal is that Appellee, Susan Silvonek Freundt, while employed as a pharmacist, misappropriated a variety of drugs from her employer for her personal use. On January 11, 2001, Appellee pled guilty to sixteen counts of acquiring or obtaining a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge, 35 P.S. § 780–113(a)(12). All sixteen counts were charged in a single criminal information which listed the offenses as occurring between June 30, 1997, and October 16, 1997. Appellee was sentenced to five years of probation on each count, to run concurrently.

Pursuant to 75 Pa.C.S. § 6323(1), the clerk of courts of Carbon County sent sixteen separate reports of Appellee's convictions to PennDot. PennDOT mailed Appellee sixteen

separate notices that her driving privileges were being suspended pursuant to 75 Pa.C.S. § 1532(c). On February 9, 2001, Appellee received the first suspension notice. On May 14, 2001, the remaining fifteen notices were mailed by Penn-DOT.

Appellee did not challenge the first notice of suspension she received, but filed an appeal in the Court of Common Pleas for Carbon County from the other fifteen suspensions, arguing that the sixteen convictions arose from a single criminal episode and therefore constituted one offense, for which a single six-month suspension was appropriate. At the *de novo* hearing before the trial court, PennDOT introduced certified copies of the sixteen notices, the corresponding sixteen forms reporting Appellee's convictions to PennDOT, and documents reflecting Appellee's driving record. Appellee presented copies of the criminal information and a stipulation whereby she pled guilty to the charges.

The trial court held that, based on the record before it, it was unable to determine whether the counts Appellee was charged with were part of a single criminal episode, as "[n]o testimony [was] presented as to how and where each violation was committed or whether the witnesses or evidence to be presented to establish the violations are the same." Trial Court Opinion, 11/13/01, at 12 (footnote omitted). Accordingly, the trial court denied Appellee's appeal and reinstated the sixteen individual suspensions.

Appellee appealed to the Commonwealth Court, which reviewed a line of its own cases interpreting § 1532(c) and its predecessor, 35 P.S. § 780–113(m).[1] Based on this precedent, the court concluded that only one suspension is mandated

1. Prior to the enactment of § 1532(c) in 1993, the statutory provision for license suspension based on drug offenses was contained in § 780–113(m) of the Drug Act. 35 P.S. § 780–113(m), Act of April 14, 1972, P.L. 233. This section was repealed in 1993, *see* Act of June 28, 1993, P.L. 137, and replaced by § 1532(c). The only significant changes to the statute were the addition of the definition of "conviction" and the deletion of the provision that multiple suspensions be served consecutively. Additionally, the new statute provides for a six-month suspension for a first offense, as opposed to the ninety days imposed by the predecessor statute.

"where there is one criminal episode, regardless of whether there were multiple convictions or offenses[,]" *Freundt v. PennDOT*, 804 A.2d 706, 712 (Pa.Cmmw.Ct.2002) (citing *Penn-DOT v. Perruso*, 160 Pa.Cmwlth. 49, 634 A.2d 692 (1993)), and that only "separate and distinct criminal episodes mandate separate consecutive suspensions. . . ." *Id.* (citing *Brosius v. PennDOT*, 664 A.2d 199 (Pa.Cmmw.Ct.1995)).

The Commonwealth Court held that there was no dispute that Appellee's convictions were a "first offense" for purposes of license suspension because she had no prior convictions, making the recidivism portions of § 1532(c)(1) inapplicable. *Freundt*, 804 A.2d at 713. Consequently, the Commonwealth Court only addressed the issue of whether the "first offense" was the result of separate and distinct acts mandating consecutive license suspensions. *Id.* The court noted that the record did not reflect whether the unlawful acquisitions occurred at one time, or whether the three-and-one-half-month period cited in the criminal information was used because the substances were inventoried during this period. The court concluded that because no separate dates were listed in the individual counts in the criminal information, PennDOT failed to establish Appellee's acts constituted more than a single criminal episode. *Id.* at 713 n. 9. The court stated that "it is just as likely as not that the 16 violations occurred during a single criminal episode." *Id.* at 713. Accordingly, the Commonwealth Court reversed the trial court's order, and Appellee received one six-month suspension for all sixteen counts. PennDOT petitioned this Court for allowance of appeal, and we granted review to determine whether § 1532(c) requires an analysis of the timing and relationship among multiple violations of the Crimes Code when imposing suspension.

PennDOT asserts that the plain language of § 1532(c) requires the imposition of a single suspension for each conviction, regardless of whether or not each separate conviction resulted from a "single criminal episode." Additionally, PennDOT asserts that the Commonwealth Court adopted a new interpretation of this statute following our decision in *Commonwealth v. Williams*, 539 Pa. 249, 652 A.2d 283 (1994). In

accord with this line of cases, PennDOT alleges that it is possible to impose multiple first offense suspensions when multiple convictions are imposed, regardless of whether the offenses arise during a single criminal episode. *Yadzinski v. Commonwealth*, 723 A.2d 263 (Pa.Cmmw.Ct.1999); *Lauer v. Commonwealth*, 666 A.2d 779 (Pa.Cmmw.Ct.1995); *Brosius, supra.*

In response, Appellee claims that the Commonwealth Court has been consistent in its determination that when multiple offenses result from a single criminal episode, then only one license suspension is appropriate. Appellee argues that, contrary to PennDOT's assertion, there are not divergent lines of cases on this point. Accordingly, Appellee alleges that Penn-DOT should bear the burden of showing that separate license suspensions from separate criminal episodes were warranted.

■ Resolution of the competing claims in this appeal requires that we begin our analysis by reviewing the text of the statute:

### § 1532. Revocation or suspension of operating privilege

\* \* \* \*

(c) **Suspension.**—The department shall suspend the operating privilege of any person upon receiving a certified record of the person's conviction of any offense involving the possession, sale, delivery, offering for sale, holding for sale or giving away of any controlled substance under the laws of the United States, this Commonwealth or any other state.

(1) The period of suspension shall be as follows:

(i) For a first offense, a period of six months from the date of suspension.

(ii) For a second offense, a period of one year from the date of the suspension.

(iii) For a third and any subsequent offense thereafter, a period of two years from the date of the suspension.

(2) For the purposes of this subsection, the term "conviction" shall include any conviction or adjudication of delinquency for any of the offenses listed in paragraph (1),

whether in this Commonwealth or any other Federal or state court.

75 Pa.C.S.A. § 1532(c).

■ The question presented for review involves the proper construction of a statute, which is a question of law; therefore, our review is plenary. *Commonwealth v. Bavusa,* 574 Pa. 620, 832 A.2d 1042 (2003).

■ The Statutory Construction Act of 1972, 1 Pa.C.S. § 1921, directs that, "the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). *See P.R. v. Commonwealth,* 569 Pa. 123, 801 A.2d 478, 482 (2002). This is accomplished by affording common and approved usage to the words and phrases in the statute, 1 Pa.C.S. § 1903, and looking beyond the language employed only when the words of the statute are not explicit. 1 Pa.C.S. § 1921(c). We must give effect to the meaning of each distinct word as chosen. *See Rossi v. Commonwealth,* 580 Pa. 238, 860 A.2d 64, 67 (2004).

■ It is well settled that a court analyzing a statute must presume the General Assembly did not intend to perform a useless act. 1 Pa.C.S. § 1922(1); *St. Joseph Lead Co. v. Potter Township,* 398 Pa. 361, 157 A.2d 638, 642, (1959). Furthermore, § 1922(2) of the Statutory Construction Act, states the General Assembly intends the entire statute to be certain and effective. *Rossi,* 860 A.2d at 66. Therefore, individual statutory provisions must be construed with reference to the entire statute of which they are a part, and the entire statute is presumed to be certain and effective, not superfluous and without import. *Id.*; *Ieropoli v. AC & S Corp.,* 577 Pa. 138, 842 A.2d 919, 929 (2004); and *Commonwealth v. Gilmour Manufacturing Co.,* 573 Pa. 143, 822 A.2d 676, 679 (2003).

In examining the plain meaning of the words, the statute uses both the word "conviction" and the word "offense." Since the presumption is that the legislature does not perform useless acts in adopting the words of a statute, the use of both

these words shows that the statute imposes a suspension not merely for each conviction for every violation of the Crimes Code, but for each conviction stemming from a criminal episode. *See St. Joseph Lead Co. v. Potter Township,* 157 A.2d at 642. If the statute merely imposed suspensions for every individual conviction of a count charged, it would only contain the word "conviction" throughout the statute. Instead, the statute is triggered by the entire phrase "conviction of any offense."

Additionally, to read "conviction of any offense" as relating to convictions stemming from a criminal episode is to read it in context and comports with the plain meaning of the rest of the statute. As the statute continues, § 1532(c)(1) states that the punishment of a suspension is imposed according to a graduated process where the first "offense" merits a six-month suspension, the second "offense" a one-year suspension, and for the third or subsequent "offense," a two-year suspension. As such, the period of suspension clearly increases with the number of offenses, rather than the number of convictions. When taking this statutory scheme as a whole, it is logical that a graduation of penalties would apply for those who have committed offenses on more than one occasion, necessitating a greater license suspension. The focus of the statutory inquiry, therefore, is on determining if the party subject to the suspension has committed one, two, or three offenses. Accordingly, we hold that since a conviction of an offense is a conviction stemming from a criminal episode, an offense for the purpose of § 1532(c) is a single criminal episode. Thus, the number of convictions arising out of the commission of any single offense is limited only by the imagination of the charging authority.

While the issue of whether § 1532(c) provides for multiple suspensions for drug convictions arising from a single criminal episode is one of first impression for our Court, the Commonwealth Court has addressed the issue in a series of cases interpreting the similar provisions of the predecessor statute, § 780–113(m). The Commonwealth Court's analysis in these

cases comports with our determination that an offense for the purposes of § 1532(c) amounts to a single criminal episode.

In the Commonwealth Court's line of cases, the focus is on determining if the party subject to the suspension has committed one, two, or three offenses. *See, e.g., Gregg v. Commonwealth*, 851 A.2d 253 (Pa.Cmmw.Ct.2004); *Carter v. Commonwealth*, 838 A.2d 869 (Pa.Cmmw.Ct.2003); *Yadzinski, supra; Lauer, supra; Brosius, supra; Heisterkamp v. Commonwealth*, 165 Pa.Cmwlth. 128, 644 A.2d 262 (1994); *Commonwealth v. Hardy*, 160 Pa.Cmwlth. 427, 635 A.2d 230 (1993). In each case decided by the Commonwealth Court where multiple suspensions are imposed, there were separate criminal episodes. *Brosius*, 664 A.2d at 202; *Lauer*, 666 A.2d at 781; and *Carter*, 838 A.2d at 873. Contrary to Appellant's position, this recognized distinction in application of the statutory suspension provision is not a new and divergent line of cases; rather, it is the consistent application of existing case law to disparate facts.

Thus, we agree with the long line of Commonwealth Court decisions that have interpreted this statutory framework to require that when there is a conviction, the appropriate suspension shall be determined by whether or not the conviction stemmed from a single criminal episode, or multiple criminal episodes. *See, e.g., Gregg, supra; Carter, supra; Yadzinski, supra; Lauer, supra; Brosius, supra; Heisterkamp, supra; Hardy, supra.*

Here, Appellee was charged with sixteen counts of unlawful acquisition of controlled substances over a three-and-one-half month period between June 30, 1997, and October 16, 1997. The record does not reflect whether the unlawful acquisitions took place at one time, or whether the "three and one-half month period" cited in the criminal information was due to the fact that the substances were inventoried by the pharmacy during this span of time. Further, there were no distinct dates set forth in the individual counts against Appellee. Therefore, Appellee's conviction was for a single "offense," within the meaning of that term in this statute, that is, a single criminal episode.

Accordingly, for the reasons set forth above, the order of the Commonwealth Court is affirmed.

Justice SAYLOR files a dissenting Opinion.

Justice EAKIN files a dissenting opinion in which Justice NEWMAN joins.

Justice SAYLOR, dissenting.

I join the substance of Mr. Justice Eakin's dissenting opinion on the statutory interpretation point. It seems to me to be basic that an "offense" is simply a violation of the law, or a crime, *see* BLACK'S LAW DICTIONARY (17th ed. 1999); *accord* 18 Pa.C.S. § 106, and that multiple offenses (or crimes) may arise out of any particular single criminal episode. *See, e.g.,* 18 Pa.C.S. § 110(1)(ii) (requiring, as a general rule, consolidation of multiple offenses arising out of a single criminal episode). Accordingly, I see no basis arising from the statutory text or its context in Section 1532(c) of the Vehicle Code that supports construing the term "offense" (or "conviction of any offense") as embodying the single-criminal-episode concept.[1]

To the extent that there are concerns regarding the impact of an extended, aggregate license suspension arising from multiple convictions (amounting, for example, to an eight-year prohibition against driving in the present case), I also note that the General Assembly has to a degree ameliorated the sanction by permitting an application for a probationary license after lapse of some period of the total term of the aggregate suspension. *See* 75 Pa.C.S. § 1554.

1.  The majority's reliance on the Legislature's use of the phrase "conviction of any offense" as opposed to "conviction" to support shifting the inquiry into one based on episode, *see* Majority Opinion at 288–89, 883 A.2d at 506, seems strained. In addition to the fact that employment of the phrase "conviction of any offense" to mean just that represents ordinary usage, in Section 1532(c) the Legislature averted to the offense concept specifically, because it proceeded to delineate the category of offenses which implicate suspension under the provision. *See* 75 Pa. C.S. § 1532(c) (providing that suspension is required relative to "conviction of any offense *involving the possession, sale, delivery, offering for sale, holding for sale or giving away of any controlled substance ....*" (emphasis added)).

Justice EAKIN, dissenting.

I dissent on two points. First, the majority holds an "offense" for purposes of § 1532(c) means a single criminal episode; I believe this interpretation is inconsistent with both the language and the aim of § 1532(c). Secondly, even if the statute means "episode" when it says "offense," the burden of establishing that 16 crimes over several months are really a single episode must fall on the party so claiming—it cannot be PennDOT's burden to establish the "lack of single episode" when it is not a party to the underlying criminal investigation or conviction, and unlike appellee, has no pre-suspension knowledge of the potential issue, much less access to the evidence needed to address such a burden.

Section 1532(c) provides that suspension shall occur when PennDOT receives notice of a licensee's "conviction of any offense." The statute defines "conviction" as "any conviction ... for any of the offenses" listed in the first paragraph, *See* 75 Pa.C.S. § 1532(c)(2). The statute does not address whether multiple counts arising from a single act or episode are to be treated differently, but as the Commonwealth Court noted in *Lauer v. PennDOT,* 666 A.2d 779 (Pa.Cmwlth.1995) (*en banc*), "the focus of [the statute] is on 'offenses,' not 'criminal acts' or the facts surrounding them." *Id.,* at 782. The statute does not differentiate between convictions arising from a single episode and convictions arising from separate episodes, and that is telling; "[a]lthough 'one is admonished to listen attentively to what a statute says[; o]ne must also listen attentively to what it does not say.'" *Kmonk–Sullivan v. State Farm Mutual Automobile Insurance Company,* 567 Pa. 514, 788 A.2d 955, 962 (2001) (citation omitted).

The phrase "conviction of an offense" is not one which involves the complex nuances my colleagues import to it. The operative act which mandates the suspension is the offense— the operative act which *triggers the imposition* of that suspension is notice of the conviction. Adding the word "conviction" merely ensures that licenses are not suspended unless and until the commission of the offense is established in court.

Regardless, one word the statute does not use is "episode." I agree it is often difficult to determine where one episode ends and a separate one begins, but there is something inherently counterintuitive about a four-month "episode." A course of similar conduct does not make something a single episode. If one steals 16 cars in four months, it is a business, not an episode. The same goes for bottles of pills; there were 16 counts here for a reason.

In the present case, the Commonwealth Court expressed the inability to determine the specifics of the offenses,[1] but we do know that the crimes were committed between certain dates, and the facts pled to caused there to be 16 counts. If this was in fact a single incident, and that were the test, the convicted party should have the burden of proving so.

If the record given the appellate court is insufficient to make the determination, the record given PennDOT is equally insufficient; it consists, again by the terms of the statute, of notice of conviction, and does not include details reflecting on the issue of "episodes." We cannot expect PennDOT to assess such matters comprehensively based on the information the legislature requires it be given. The General Assembly never intended that a licensee should escape the consequences of 16 violations, since PennDOT is not given the whole criminal file to try to figure out whether the offenses occurred other than in a single episode. Nor can the propriety of a civil license suspension depend on the amount of detail set forth in the record of a plea in a collateral criminal case.

1. The majority notes the record does not reflect details of the three and one-half month period of the stealing of the drugs (information apparently not necessary to the criminal plea, and not required by custom or statute to be forwarded to PennDOT), and from this concludes: "[t]herefore, Appellee's conviction was for a single 'offense' within the meaning of that term in this statute, that is, a single criminal episode." Maj. Op., at 291, 883 A.2d at 508. I can find no logic to this alchemy. There were 16 offenses here, no matter whether the record shows they were part of one long course of conduct or not. An offense is simply a violation of the law, or a crime, *see* Black's Law Dictionary (17th ed. 1999); *accord* 18 Pa.C.S. § 106, and multiple offenses (or crimes) may arise out of any particular single criminal episode. *See, e.g.*, 18 Pa.C.S. § 110(1)(ii) (requiring, as general rule, consolidation of multiple offenses arising out of single criminal episode).

Burdon of proof aside, I would hold that under § 1532(c), a separate suspension is properly imposed for each count of which the licensee is convicted, regardless of whether the counts occurred in a single criminal episode. This approach is consistent with *Frontini v. Commonwealth, Department of Transportation*, 527 Pa. 448, 593 A.2d 410 (1991), which involved a similar issue: whether a driver could be classified as a habitual offender under 75 Pa.C.S. § 1542, when his convictions for three counts of homicide by vehicle arose from the same accident. Unlike the statute at issue, § 1542 specifically provided the convictions had to arise from "separate acts" for them to be classified as separate offenses for the purpose of imposing a recidivist penalty. This Court concluded that since the three convictions arose from a single act, they could not be counted as separate offenses, so the recidivist penalty was not applicable. *Frontini*, at 412. Thus, this Court has upheld the use of a "single criminal episode" analysis in a license suspension where it is required by statute. However, § 1532(c) contains no such language.

A "single criminal episode" analysis is appropriate for criminal prosecutions, as there are policy considerations not present in license suspension cases: 1) protection of the accused "from governmental harassment of being forced to undergo successive trials for offenses stemming from the same criminal episode," and 2) the matter of "judicial administration and economy, to assure finality without unduly burdening the judicial process by repetitious litigation." *Commonwealth v. Hude*, 500 Pa. 482, 458 A.2d 177, 180 (1983). The compulsory joinder rule and 18 Pa.C.S. § 110 protect these interests by requiring that all crimes arising from the same criminal episode be charged and tried together. *Id.*; *see also Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) ("[T]he state ... should not be allowed to make repeated attempts to convict an individual for an alleged offense...."); *Commonwealth v. Stewart*, 493 Pa. 24, 425 A.2d 346, 349 (1981) ("Compulsory joinder of all offenses arising from a single 'transaction' avoids piecemeal litigation and thus conserves precious judicial and professional manpower as well

as the time of jurors, witnesses, and the use of public resources.") (quoting *Commonwealth v. Campana [I]*, 452 Pa. 233, 304 A.2d 432, 441 (1973), *vacated on other grounds and remanded*, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973)). This guards against prosecutorial forum-shopping, duplicative trials and consequent depletion of judicial resources, unnecessary delay and expense to the accused and the Commonwealth, and unnecessary aggravation to the accused and witnesses. *See, e.g., Commonwealth v. Travaglia*, 723 A.2d 190, 193–94 (Pa.Super.1998) (citation omitted).

These concerns are not present in a license suspension case, where the licensee has already been charged and convicted of the underlying offenses. That which compulsory joinder is intended to guard against is not a concern. A license is a privilege, not a constitutional liberty; removal of the latter is obviously to be more jealously guarded than the former.

The Double Jeopardy Clause protects the convicted defendant from multiple prosecutions for the same offense, requiring a "single criminal episode" analysis. *Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569, 571–72 (1981); *see also Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Again, these concerns are not present in license suspension cases, where the licensee has already been sentenced for the crimes on which the suspension is based (in this case, drug offenses; appellee received five years probation for each count). Finally, as this Court has noted, license suspension is "merely a civil consequence of a criminal violation." *Plowman v. PennDOT*, 535 Pa. 314, 635 A.2d 124, 128 (1993). Therefore, the double jeopardy protections afforded in the criminal setting are not applicable in such cases, and the "single criminal episode" analysis is unnecessary.[2]

2. *See also Department of Transportation, Bureau of Driver Licensing v. Gonzalez*, 117 Pa.Cmwlth. 224, 543 A.2d 231 (1988) (75 Pa.C.S. § 1544 required mandatory periods of suspension under § 1532(b)(3) for two incidents of driving under influence of alcohol to be served consecutively, although both convictions were on same date). I do not reach the separate situation where the underlying convictions merged for criminal sentencing purposes. Appellee's convictions did not merge, and this issue was not raised.

Accordingly, I would reverse the order of the Commonwealth Court and remand the matter for reimposition of the original suspensions.

Justice NEWMAN joins this dissenting opinion.