Jeffrey GAYMAN, Appellant

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Bureau of Driver Licensing.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 8, 2013.

Decided March 21, 2013.

James E. Tone, Lafayette Hill, for appellant.

Terrance M. Edwards, Assistant Counsel, Harrisburg, for appellee.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

In these consolidated appeals,[1] Jeffrey Gayman appeals from an Order of the Court of Common Pleas of Bucks County (trial court) denying his appeal of three consecutive six-month suspensions of his operating privilege imposed by the Pennsylvania Department of Transportation, Bureau of Driver Licensing (DOT), pursuant to Section 1532(c) of the Vehicle Code.[2] DOT imposed the three suspensions based upon Gayman's convictions for violating Section 13(a)(16) and (30) of The Controlled Substance, Drug, Device and Cosmetic Act[3] (Drug Act) on three separate dates—December 19, 2010, December 20, 2010, and December 30, 2010. On appeal, Gayman argues that because his three convictions for violating the Drug Act arose out of a single criminal episode, two of the three consecutive six-month suspensions of his operating privilege should be quashed or eliminated, thereby resulting in one six-month suspension.

The facts, as found by the trial court, in this matter are as follows. After a tele-

---

1. These appeals were consolidated by this Court on October 24, 2012.

2. 75 Pa.C.S. § 1532(c). Section 1532(c) provides as follows:

(c) **Suspension.**—The department shall suspend the operating privilege of any person upon receiving a certified record of the person's conviction of any offense involving the possession, sale, delivery, offering for sale, holding for sale or giving away of any controlled substance under the laws of the United States, this Commonwealth or any other state, or any person 21 years of age or younger upon receiving a certified record of the person's conviction or adjudication of delinquency under 18 Pa.C.S. § 2706 (relating to terroristic threats) committed on any school property, including any public school grounds, during any school-sponsored activity or on any conveyance providing transportation to a school entity or school-sponsored activity.

(1) The period of suspension shall be as follows:

(i) For a first offense, a period of six months from the date of the suspension.

(ii) For a second offense, a period of one year from the date of the suspension.

(iii) For a third and any subsequent offense thereafter, a period of two years from the date of the suspension.

(2) For the purposes of this subsection, the term "conviction" shall include any conviction or adjudication of delinquency for any of the offenses listed in paragraph (1), whether in this Commonwealth or any other Federal or state court.

*Id.*

3. Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. § 780–113(a)(16), (30). Section 13(a) prohibits, *inter alia*, certain "acts and the causing thereof within the Commonwealth"; specifically, "[k]nowingly or intentionally possessing a controlled or counterfeit substance by a person not" so authorized by the Drug Act, 35 P.S. § 780–113(a)(16), and "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not" authorized by the Drug Act "or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." 35 P.S. § 780–113(a)(30).

phone call from Gayman's father to the police complaining of Gayman's heroin use, the police arrested Gayman at his father's home on the evening of December 19, 2010 for possession of heroin. The police took Gayman into custody, and he was released after two or three hours whereupon he was picked up by a friend. Because Gayman and his friend had no place to go, they proceeded to sleep in the friend's parked car for the night. About four hours after being released, the police found Gayman and his friend in a parking lot sleeping in the car. Gayman was again arrested for possession of heroin in the early morning hours of December 20, 2010. Gayman was involved in a third criminal incident ten days later on December 30, 2010, when, to support his heroin addiction, he sold Suboxone, for which he was arrested for the unlawful delivery of the drug. Gayman was separately charged with unlawful possession of heroin for the December 19, 2010 and December 20, 2010 incidents, and with unlawful delivery of a controlled substance as a result of the December 30, 2010 incident. (Trial Ct. Op. at 1–2.)

On January 4, 2012, Gayman was convicted of violating Section 13(a)(16) of the Drug Act on December 19, 2010 and December 20, 2010, and violating Section 13(a)(30) on December 30, 2010. (Form DL–21D, December 19, 2010 Date of Violation, R.R. at 33; Form DL–21D, December 20, 2010 Date of Violation, R.R. at 29; Form DL–21 D, December 30, 2010 Date of Violation, R.R. at 24.) Upon receiving certification from the trial court of each of Gayman's three convictions for violating the Drug Act, DOT mailed Gayman three separate official notices of suspension advising him that his operating privilege was suspended for six months and that the suspensions were consecutive. (Official Notices of Suspension, R.R. at 21, 26, and 30.) Thus, Gayman's operating privilege was suspended for a total of eighteen months.

Gayman appealed the suspensions to the trial court, which held a *de novo* hearing. In support of the suspensions, DOT offered into evidence: (1) copies of the three official notices of suspension; (2) copies of the three D L–21 D Forms issued by the Clerk of Courts of Bucks County certifying Gayman's three convictions for violating the Drug Act; and (3) copies of Gayman's driving history record. Gayman testified in support of his contention that his multiple drug convictions were part of a single criminal episode warranting one six-month suspension of his operating privilege because the convictions all occurred during a short period of time in December 2010 when he was addicted to heroin. After reviewing the pertinent case law, the trial court rejected Gayman's contention after determining that "Gayman's three (3) arrests were separate and distinct, based upon separate and distinct criminal acts of unlawful possession of a controlled substance on December 19, 2010, unlawful possession of a controlled substance on December 20, 2010, and unlawful possession and delivery of a controlled substance on December 30, 2010." (Trial Ct. Op. at 6–7.) The trial court concluded that the record lacked evidence to persuasively support Gayman's assertions that his violations of the Drug Act were part of a single criminal episode. Accordingly, the trial court denied Gayman's appeals and reinstated the three six-month consecutive suspensions of his operating privilege imposed by DOT. This appeal followed.[4]

4. Our scope of review is limited to determining whether the trial court's findings are supported by substantial evidence, whether it committed any errors of law and whether it abused its discretion. *Wheatley v. Department*

■ It is well-settled that, "for purposes of license suspensions issued pursuant to Section 1532(c) [of the Vehicle Code] relating to violations of the [Drug Act], only a single suspension is appropriate where multiple violations arise from a single criminal episode." *Strawn v. Department of Transportation*, 609 Pa. 482, 485, 17 A.3d 320, 322 (2011) (citing *Freundt v. Department of Transportation, Bureau of Driver Licensing*, 584 Pa. 283, 291, 883 A.2d 503, 507 (2005)). Our Supreme Court in *Freundt* held that "since a conviction of an offense is a conviction stemming from a criminal episode, an offense for the purpose of Section 1532(c) is a single criminal episode." *Freundt*, 584 Pa. at 290, 883 A.2d at 507. "Thus, the number of convictions arising out of the commission of any single offense is limited only by the imagination of the charging authority." *Id.* DOT "bears the burden of making a prima facie showing that multiple offenses were not part of a single criminal episode." *Giambrone v. Department of Transportation, Bureau of Driver Licensing*, 929 A.2d 1265, 1269 (Pa.Cmwlth.2007). DOT "meets its burden by submitting into evidence its certified record of conviction demonstrating that each offense was separately charged and occurred on different days." *Carter v. Department of Transportation, Bureau of Driver Licensing*, 838 A.2d 869, 872 (Pa.Cmwlth.2003). "Upon this showing, the burden of proof then shifts to the licensee to present 'clear and convincing evidence' to rebut the presumption of correctness raised by [DOT's] certified records." *Id.* (quoting *Mateskovich v. Department of Transportation, Bureau of Driver Licensing*, 755 A.2d 100, 102 (Pa. Cmwlth.2000)).

■ In this appeal, Gayman does not dispute that DOT succeeded before the trial court in making a prima facie showing that he was separately charged and convicted for three offenses of the Drug Act that occurred on different days, specifically, December 19, 20, and 30, 2010. Gayman contends, however, that his actions in the final ten days of December 2010, which were the result of his heroin addiction, constituted a single criminal episode as defined by our Supreme Court; therefore, twelve months of the suspension of his operating privilege should be, by law, quashed or eliminated. As support for his contention, Gayman relies upon *Commonwealth v. Hude*, 500 Pa. 482, 458 A.2d 177 (1983), *Freundt*,[5] and *Heisterkamp v. Department of Transportation, Bureau of Driver Licensing*, 165 Pa.Cmwlth. 128, 644 A.2d 262 (1994).

In *Hude*, our Supreme Court considered what constituted a single criminal episode under the statutory prohibition against bringing a second criminal prosecution if charges at the second trial should have been joined with the criminal charges at the first trial. Upon review, the Supreme Court opined that "in defining what acts constitute a single criminal episode, not only is the temporal sequence of events important, but also the logical relationship between the acts must be considered." *Hude*, 500 Pa. at 491, 458 A.2d at 181. Accordingly, the Supreme Court held that "where a number of charges are logically and/or temporally related and share common issues of law and fact, a single criminal episode exists." *Id.* at 494, 458 A.2d at 183.

*of Transportation*, 104 Pa.Cmwlth. 171, 521 A.2d 507, 508 (1987).

**5.** While Gayman relies upon this Court's decision in *Freundt*, we note that our decision was affirmed by our Supreme Court; therefore, it is the Supreme Court's decision in *Freundt* that is controlling in this appeal.

In *Heisterkamp*, the licensee was an assistant district attorney with access to an evidence locker from which she removed cocaine for her personal use at various times over a seven-month period of time. The licensee pled guilty to 21 violations of the Drug Act for possession of a controlled substance, which resulted in DOT notifying her, through 23 separate notices, that her operating privilege was being suspended for a total of 39 years. The licensee appealed, and the trial court sustained her appeals and ordered DOT to restore her operating privilege. On appeal to this Court, we held "that the appropriate penalty for [the licensee's] conviction, albeit on 21 counts for violations over a seven-month period, was a suspension ... for a first offense" because "her repeated acts of taking cocaine from the evidence locker were the result of one continuous criminal scheme or one criminal 'episode.'" *Heisterkamp*, 644 A.2d at 267. Accordingly, we affirmed the trial court's order sustaining the licensee's appeal. *Id.*

In *Freundt*, the licensee was a pharmacist who misappropriated various quantities of drugs from her employer for personal use. The licensee pled guilty to 16 violations of the Drug Act. The 16 violations were charged in a single criminal information, which listed the offenses as occurring between June 30, 1997 and October 16, 1997. As a result, DOT notified the licensee, through 16 separate notices, that her operating privilege was being suspended for 16 consecutive six-month periods. The licensee appealed to the trial court arguing that the convictions arose from a single criminal episode, which constituted one offense; therefore, a single six-month suspension was appropriate. The trial court denied the licensee's appeals and, on further appeal to this Court, we reversed, holding that the record failed to support DOT's position that the licensee's violations constituted multiple first

offenses as opposed to a single criminal episode. DOT then appealed to the Supreme Court which held that "when there is a conviction, the appropriate suspension shall be determined by whether or not the conviction stemmed from a single criminal episode, or multiple criminal episodes." *Freundt*, 584 Pa. at 291, 883 A.2d at 507. In affirming this Court's decision, the Supreme Court determined that:

> [The licensee] was charged with sixteen counts of unlawful acquisition of controlled substances over a three-and-one-half month period between June 30, 1997, and October 16, 1997. The record does not reflect whether the unlawful acquisitions took place at one time, or whether the "three and one-half month period" cited in the criminal information was due to the fact that the substances were inventoried by the pharmacy during this span of time. Further, there were no distinct dates set forth in the individual counts against [the licensee]. Therefore, [the licensee's] conviction was for a single "offense," within the meaning of that term in this statute, that is, a single criminal episode.

*Id.* at 291, 883 A.2d at 507–08.

Based upon the foregoing, Gayman argues that his conduct occurred over ten days, with two of the charges occurring within hours of each other; therefore, the acts committed by him during those ten days due to his heroin addiction logically constitute a single criminal episode. However, Gayman's argument ignores this Court's more recent precedent in this area which holds, based on *Freundt*, that where multiple violations of the Drug Act are committed on different days and separately charged, each of the convictions mandates a separate suspension pursuant to Section 1532(c).

In *Giambrone*, 929 A.2d at 1268–69, we reviewed our prior decisions and the Supreme Court's reasoning in *Freundt*, and concluded that "[t]he necessary corollary is that where separate acts occur on different dates, they are separate offenses, for purpose of Section 1532(c)." *See Lauer v. Department of Transportation, Bureau of Driver Licensing*, 666 A.2d 779, 781–82 (Pa.Cmwlth.1995) (holding that there was "no evidence to support any finding that [the] [l]icensee's three convictions arose from a single 'criminal episode' and therefore only merit[ed] a single suspension" where the licensee sold cocaine to an undercover police officer on three different days within a single week under similar circumstances); *Carter*, 838 A.2d at 873 (holding that "the evidence submitted by [DOT] against [the licensee] demonstrated that the three convictions resulted from three separate acts that occurred on three separate and clearly identifiable days, rather than a series of acts over a seven-month period with no specified dates, as in *Freundt*"); *Gregg v. Department of Transportation, Bureau of Driver Licensing*, 851 A.2d 253, 256 (Pa.Cmwlth.2004) (noting that "[f]atal to DOT's case [in *Freundt*] was the fact that it did ***not*** show that the acquisitions had taken place on different dates" and further noting "that the criminal acts [in *Carter*] had occurred on three separate and 'clearly identifiable' dates ... [and] we based our decision on whether violation dates ... were different or the same") (emphasis in original). Accordingly, we held in *Giambrone* that "our courts have established a clear and workable standard, capable of consistent application;" therefore, DOT was required to present evidence that the convictions at issue in *Giambrone* were for "separate and distinct criminal acts, separately charged, that occurred on different days." *Giambrone*, 929 A.2d at 1269 (footnote omitted).

Upon review of the licensee's appeal, we agreed with the trial court that DOT met its burden by submitting certified documents into the record showing that twelve separate criminal acts occurred on eleven separate and clearly identifiable dates and held that:

> This distinguishes the present case from *Freundt*, where the record simply did not contain any evidence of specific violation dates. Although the criminal informations submitted by [the licensee] may have *charged* date ranges, some of which overlapped in part, the trial court did not accept that evidence as sufficient to rebut the presumption of accuracy in the specific violation dates listed on the DL–21 D Forms, which the Clerk of the *convicting* court certified after the entry of guilty pleas. Such fact-finding is the trial court's province. Based upon the supported finding that [the licensee] was convicted of twelve offenses occurring on eleven different dates, the trial court properly applied the law set forth above to sustain her appeal to one of the twelve suspensions, while leaving the other eleven intact.

*Id.* (emphasis in original).

Here, as in *Giambrone*, the factual scenario presented is unlike the scenarios in *Freundt* and *Heisterkamp* where the criminal activity could not be identified by specific dates. Gayman's three separate and distinct violations of the Drug Act occurred on separate, clearly identifiable days and were separately charged. Accordingly, Gayman is subject to three separate six-month suspensions of his operating privilege pursuant to Section 1532(c) of the Vehicle Code. *Giambrone*, 929 A.2d at 1269 ("[W]here separate acts occur on different dates, they are separate offenses for purpose of Section 1532(c)."); *Gregg*, 851 A.2d at 256 (criminal acts that occur on separate and "clearly identifiable" dates

are not regarded as part of a single criminal episode).

We recognize that our Supreme Court in *Hude* defined, in the context of compulsory joinder, what acts constitute a single criminal episode. *Hude*, 500 Pa. at 491, 458 A.2d at 181. It is this definition that Gayman urges this Court to apply here to find that his three convictions for violations of the Drug Act constitute a single criminal episode because he was addicted to heroin during the time period that the violations occurred. However, in *Freundt* and its more recent decision in *Strawn*, the Supreme Court did not apply the compulsory joinder analysis from *Hude* to fashion a definition as to what constitutes a "single criminal episode" for purposes of an operating privilege suspension pursuant to Section 1532(c) of the Vehicle Code.[6] In addition, no majority opinion of this Court has applied the *Hude* analysis in these types of suspension cases. Moreover, the fact that

Gayman's violations of the Drug Act on December 19, 2010 and December 20, 2010 occurred within approximately seven hours of each other is of no moment since the conduct surrounding each incident was separate and distinct. Gayman was first arrested on December 19, 2010 at his father's home after the police were notified of Gayman's drug activity. Gayman was then arrested on December 20, 2010 after the police found him sleeping in his friend's parked car. In short, Gayman was not arrested and charged with multiple violations arising from one criminal incident, but instead was separately charged for conduct arising out of two separate criminal incidents. The fact that these criminal incidents arose over a period of time that Gayman was suffering from a heroin addiction is insufficient to meet his burden of proof, pursuant to established precedent, that the violations of the Drug Act were all part of a single criminal

---

6. We note that Justice Eakin opined, in his dissenting opinion in *Freundt*, that:

> A "single criminal episode" analysis is appropriate for criminal prosecutions, as there are policy considerations not present in license suspension cases: 1) protection of the accused "from governmental harassment of being forced to undergo successive trials for offenses stemming from the same criminal episode," and 2) the matter of "judicial administration and economy, to assure finality without unduly burdening the judicial process by repetitious litigation." *Commonwealth v. Hude*, 500 Pa. 482 [488], 458 A.2d 177, 180 (1983). The compulsory joinder rule and 18 Pa.C.S. § 110 protect these interests by requiring that all crimes arising from the same criminal episode be charged and tried together. *Id.; see also Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) ("[T]he state ... should not be allowed to make repeated attempts to convict an individual for an alleged offense...."); *Commonwealth v. Stewart*, 493 Pa. 24 [29], 425 A.2d 346, 349 (1981) ("Compulsory joinder of all offenses arising from a single 'trans-

> action' avoids piecemeal litigation and thus conserves precious judicial and professional manpower as well as the use of . public resources.") (quoting *Commonwealth v. Campana*, 452 Pa. 233 [252], 304 A.2d 432, 441 (1973), *vacated on other grounds and remanded*, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973)). This guards against prosecutorial forum-shopping, duplicative trials and consequent depletion of judicial resources, unnecessary delay and expense to the accused and the Commonwealth, and unnecessary aggravation to the accused and witnesses. *See, e.g., Commonwealth v. Travaglia*, 723 A.2d 190, 193–94 (Pa.Super.1998) (citation omitted).
>
> These concerns are not present in a license suspension case, where the licensee has already been charged and convicted of the underlying offenses. That which compulsory joinder is intended to guard against is not a concern. A license is a privilege, not a constitutional liberty; removal of the latter is obviously to be more jealously guarded than the former.

*Freundt*, 584 Pa. at 295–96, 883 A.2d at 510 (Eakin, J., dissenting).

episode. For the foregoing reasons, the trial court's Order is affirmed.

### *ORDER*

NOW, March 21, 2013, the Order of the Court of Common Pleas of Bucks County entered in the above-captioned matter is **AFFIRMED.**