**Susan Silvonek FREUNDT, Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 17, 2002.

Decided July 30, 2002.

Robert M. Rosenblum, Stroudsburg, for appellant.

Terrance M. Edwards and Timothy P. Wile, Asst. Counsel In-Charge, Harrisburg, for appellee.

Before McGINLEY, Judge, LEAVITT, Judge, and DOYLE, Senior Judge.

OPINION BY Judge McGINLEY.

Susan Silvonek Freundt (Freundt) appeals the order of the Court of Common Pleas of Carbon County (trial court) that denied Freundt's appeal from fifteen consecutive six-month suspensions of her operator's license pursuant to Section 1532(c) of the Pennsylvania Vehicle Code (Code), 75 Pa.C.S. § 1532(c).[1]

By official notice dated February 9, 2001, the Department of Transportation, Bureau of Driver Licensing (DOT) notified Freundt that her operating privilege was suspended for a period of six months, effective March 16, 2001, as a result of her January 11, 2001, conviction for violations of Section 13(a)(12) of the Controlled Substance, Drug, Device and Cosmetic Act (Drug Act)[2], 35 P.S. § 780–113(a)(12). On May 14, 2001, Freundt received fifteen more official notices from DOT that her operating privilege was suspended for fifteen more consecutive six-month periods, or until March 19, 2009, as a result of her conviction on January 11, 2001. Freundt appealed to the trial court.

At a *de novo* hearing, DOT offered into evidence: 1) a copy of the sixteen official notices of suspension of operating privilege sent by DOT to Freundt; 2) a copy of sixteen corresponding DL–21D forms reporting each of Freundt's convictions; and 3) copies of documents reflecting Freundt's driving history. Exhibit R–1, Reproduced Record (R.R.) at 31a.

DOT introduced into evidence a certification by Rebecca L. Bickley, Director of the Bureau of Driver Licensing, which verified that each document contained in Exhibit R–1 was a "full, true and correct certified photostatic copy." Exhibit R–1, R.R. at 56a.

Freundt did not testify or produce any witnesses. However, Freundt did offer into evidence a copy of a stipulation entered between the Commonwealth of Pennsylvania and Freundt.[3] Additionally, Freundt entered into evidence a copy of

---

1. Section 1532(c) of the Code, 75 Pa.C.S. § 1532(c) provides:

    **(c) Suspension.**—The department shall suspend the operating privilege of any person receiving a certified record of the person's conviction of any offense involving the possession, sale, delivery, offering for sale, holding for sale, or giving away of any controlled substance under the laws of the United States, this Commonwealth or any other state, or any person 21 years of age or younger upon receiving a certified record of the person's conviction or adjudication of delinquency under 18 Pa.C.S. § 2706 (relating to terroristic threats) committed on any school property, including any public school grounds, during any school-sponsored activity or on any conveyance providing transportation to a school entity or school sponsored activity.

    1) The period of suspension shall be as follows:

    (i) For a first offense, a period of six months from the date of the suspension.
    (ii) For a second offense, a period of one year from the date of the suspension.
    (iii) For a third and any subsequent offense thereafter, a period of two years from the date of the suspension.
    (2) For the purpose of this subsection, the term "conviction" shall include any conviction or adjudication of delinquency for any of the offenses listed in paragraph (1), whether in this Commonwealth or any other Federal or state court.

2. Act of April 14, 1972, P.L. 233, *as amended.*

3. On December 19, 2000, the Commonwealth of Pennsylvania and Freundt entered into a stipulation where Freundt pled guilty to all 16 counts of violating Section 13(a)(12) of the Drug Act. Stipulation at 1, R.R. at 51a.

the Criminal Information that contained 16 charges brought against Freundt by the District Attorney of Carbon County for violations of Section 13(a)(12) of the Drug Act between June 30, 1997, and October 16, 1997. The Criminal Information indicated that the 16 separate charges brought against Freundt were premised on the unlawful acquisition of 16 distinct controlled substances.[4]

The trial court denied Freundt's appeal and concluded that no more was contained in the record of the present controversy than appeared in the Commonwealth Court's decision in *Lauer v. Department of Transportation, Bureau of Driver Licensing*, 666 A.2d 779 (Pa.Cmwlth.1995). The trial court concluded that there was no substantial evidence to support the allegation that Freundt's sixteen convictions arose from a single "criminal episode":

> [W]hether repeated criminal acts of a similar nature committed within a short period of time constitute one offense or multiple offenses within the meaning of Section 1532(c) of the Vehicle Code for determining whether one or multiple suspensions should be imposed depends upon the factual determination whether the violation charged are part of a "single criminal episode" or separate and distinct criminal acts of a similar nature.
>
> . . . .
>
> On the record before this Court, the Court is unable to determine whether the violations of the Drug Act with which [Freundt] was charged involve a series of ongoing, indistinguishable acts or an identical pattern of behavior, or whether the proof of each violation is independent of the other and involves discrete facts unrelated to one another. No testimony has been presented as to how and where each violation was committed or whether the witnesses or evidence to be presented to establish the violation are related.

Trial Court Opinion, November 13, 2001, at 9–12.

On appeal[5], Freundt contends that the trial court erred as a matter of law and abused its discretion in failing to find that Freundt's multiple violations of the Drug Act arose from a single criminal episode for which only a single six-month suspension of her operating privilege was warranted. This Court agrees.

The question whether multiple violations of Section 1532(c) of the Code, formerly Section 13(m) of the Drug Act,[6] constitute

---

4. Specifically, the Criminal Information indicated that Freundt was charged with acquisition or obtaining of possession of a controlled substance between June 30, 1997, and October 16, 1997, and not on any specific date:

Count # 1—Oxycontin
Count # 2—MS Contin, 15 mg.
Count # 3—MS Contin, 30 mg.
Count # 4—MS Contin, 100 mg.
Count # 5—Roxiprin
Count # 6—Roxicodone
Count # 7—Adderall, 10 mg.
Count # 8—Adderall, 20 mg.

Count # 9—Dexedrine, 5 mg.
Count # 10—Percodan
Count # 11—Endodan
Count # 12—Roxilox
Count # 13—Methylphenidate, 5 mg.
Count # 14—Methylphenidate, 10 mg.
Count # 15—Ritalin, 20 mg.
Count # 16—Ritalin, 20 SR

Criminal Information at 1–4, R.R. at 52a–55a.

5. This Court's review is limited to determining whether the trial court's findings are supported by substantial evidence, whether errors of law were committed, or whether the trial court committed an abuse of discretion in making its determination. *Wheatley v. De-partment of Transportation*, 521 A.2d 507, 104 Pa.Cmwlth. 171 (1987).

6. This Court notes that Section 13(m) was repealed by the Act of June 28, 1993, P.L.

a single criminal episode that mandates a single six-month suspension, or separate and distinct acts requiring independent consecutive six-month suspensions has been addressed by this Court. Accordingly, this Court shall review the pertinent case law.

## I. Single Criminal Episode

In *Department of Transportation, Bureau of Driver Licensing v. Perruso,* 160 Pa.Cmwlth. 49, 634 A.2d 692 (1993), Donald Morris Perruso (Perruso) was charged with two counts of violating the Drug Act after he consented to a search of his vehicle on December 21, 1990. On October 7, 1991, Perruso was convicted of possession of a controlled substance, marijuana, in violation of Section 13(a)(16) of the Drug Act, and possession of a controlled substance, psilocyn, also in violation of Section 13(a)(16) of the Drug Act. Pursuant to Section 13(m) of the Drug Act, DOT sent Perruso two separate official notices and informed him that his license was suspended 90 days for the first count and one year as a result of the second count. The Court of Common Pleas of Northampton County "directed DOT to suspend Perruso's operating privilege for 90 days for a first offense only." *Id.* at 693–94.

On appeal, this Court affirmed the trial court's decision holding that:

> [w]here multiple convictions of the Drug Act arise from a single act, and the defendant has no prior convictions under the Drug Act, the enhancement provisions of Section 13(m) are not applicable.
>
> . . . .

Perruso was charged with violating two provisions of the Drug Act on December 21, 1990, for which he pled guilty on October 7, 1991. Because Perruso had no prior convictions and the two convictions here arose out of a single incident, those convictions constitute a "first offense" under Section 13(m). We are fully aware of the detrimental effect that drugs have on society; however, we also recognize *enhancement provisions are designed to deter future criminal behavior.* In the present case, there is no deterrent purpose to be served by suspending Perruso's operating privilege for an additional year under Section 13(m). Thus, we affirm the lower court order which held that Perruso's operating privileges could be suspended for 90 days for a first offense only. (Emphasis in original).

*Perruso,* 634 A.2d at 696.

In *Department of Transportation, Bureau of Driver Licensing v. Hardy,* 160 Pa.Cmwlth. 427, 635 A.2d 230 (1993) this Court expanded the rationale enunciated in *Perruso,* that a "single act" may include offenses which involve identical factual scenarios perpetrated on different days that result in multiple Drug Act convictions. In *Hardy,* Charles Hardy (Hardy) was arrested on May 23, 1990, and charged with one count of possession of cocaine in violation of Section 13(a)(16) of the Drug Act; he was also charged with one count of delivering cocaine in violation of the Drug Act's Section 13(a)(30). On March 12, 1991, before those criminal charges were resolved, Hardy was arrested again and charged with one count of possession of cocaine.[7] On January 2, 1992, Hardy pled

137, and its provisions added to the Vehicle Code by an amendment to Section 1532(c). 75 Pa.C.S. § 1532(c). Section 1532(c) of the Vehicle Code remains substantially the same as Section 13(m) of the Drug Act, but now

requires a six-month suspension for a first offense as opposed to 90 days.

7. Similarly, Thomas Lancos (Lancos) was arrested and charged with possession of cocaine on January 16, 1991, and was arrested again

guilty to all three counts at a single proceeding. On February 20, 1992, DOT notified Hardy that his driving privileges were scheduled to be suspended for two consecutive 90 day periods pursuant to Section 13(m) of the Drug Act as a result of his convictions based upon the May 23, 1990, incident. On March 10, 1992, DOT notified Hardy that his driving privileges were being suspended for an additional one year period as a result of his conviction based upon the March 12, 1991, incident. "After a hearing, the trial court sustained Hardy's appeal to the extent that the court directed DOT to remove one of Hardy's 90 day suspensions." *Hardy*, 635 A.2d at 232.

On appeal, this Court reasoned that:

DOT now makes essentially the same arguments it made in [*Perruso*]. In that case, we held that where a licensee has no prior convictions under the Drug Act and two convictions result from a single criminal episode, those convictions constitute a "first offense" under Section 13(m). Just as we rejected DOT's arguments in *Perruso,* we reject them here based upon the reasoning set forth in *Perruso.*

*Hardy,* 635 A.2d at 232–33.

■ Therefore, *Hardy* stands for the proposition that even when a licensee had violated the Drug Act on different days, multiple convictions arising from a single criminal episode constituted a first offense under Section 13(m).

Similarly, in *Heisterkamp v. Department of Transportation, Bureau of Driver Licensing,* 165 Pa.Cmwlth. 128, 644 A.2d 262 (1994), Laura Vanderbilt Heisterkamp (Heisterkamp) pled guilty on September 15, 1992, to 21 counts of possession of a controlled substance in violation of Section 13(a)(16) of the Drug Act, and 21 counts of

theft by unlawful taking that occurred during the time period between April 1, 1991, and November 22, 1991. Pursuant to Section 13(m) of the Drug Act, DOT sent Heisterkamp several official notifications of suspension at various times, which suspended her operating privilege for a total of 39 years.

On appeal, this Court reasoned that:

Applying the reasoning and holdings of *Perruso* and *Hardy* to this case, we find that the appropriate penalty for Heisterkamp's conviction, albeit on 21 counts for violations over a seven-month period, was a suspension for 90 days for a first offense. She had no prior convictions under the Drug Act, and her repeated acts of taking cocaine from the evidence locker were the result of one continuous criminal scheme or one criminal "episode."

*Heisterkamp,* 644 A.2d at 267.

## II. Separate and Distinct Acts

The line of cases beginning with *Perruso* clearly reflect this Court's rejection of DOT's attempt to utilize the enhancement element of Section 13(m) of the Drug Act and Section 1532(c) of the Code to apply an enhanced penalty for "first offenses." However, beginning with *Brosius v. Department of Transportation, Bureau of Driver Licensing,* 664 A.2d 199 (Pa. Cmwlth.1995), this Court recognized so-called "multiple first offenses" where the licensee's multiple violations are deemed to be separate and distinct, mandating consecutive license suspensions.

In *Brosius,* Kirk Brosius (Brosius) pled guilty to two separate charges arising from two separate incidents that occurred on January 2, 1991, and on October 3, 1991. On October 26, 1992, Brosius was notified

three days later and charged with possession of cocaine. By order of this Court, we consolidated *Hardy* with the companion case of Hardy.

by DOT that his license would be suspended for a period of 90 days for the January 2, 1991, offense, and one year for the October 3, 1991, offense pursuant to Section 13(m) of the Drug Act.

On appeal, this Court held that for the purposes of Section 13(m) of the Drug Act, construing separate convictions as multiple "first offenses" that required consecutive suspensions is appropriate, provided that the multiple violations are not part of a single criminal scheme or episode:

> [W]hen a second offense is committed before the conviction occurs on the first offense, or the final judgment of conviction for multiple offenses occurs at the same time, and, the licensee does not have other extant drug convictions, all convictions will be deemed to be "first offenses" mandating separate and consecutive terms of suspension.
>
> . . . .
>
> In this case Licensee was convicted of two violations of the Drug Act. There is no evidence in the record that the two violations, which occurred ten months apart, were part of a single criminal scheme or episode. Therefore, it is appropriate to impose a penalty for each of these convictions as deemed "first offenses" requiring two ninety-day suspensions.

*Brosius*, 664 A.2d at 202.

In *Lauer*, Robert James Lauer (Lauer) sold cocaine to an undercover police officer on three separate dates: September 6, 1990, September 7, 1990, and September 12, 1990. Lauer was arrested and on July 9, 1991, pled guilty to three counts of violating Section 13(m) of the Drug Act.

DOT was informed of these convictions on April 4, 1994, and on June 13, 1994, DOT informed Lauer that he was classified as a habitual offender and that his license would be suspended. Lauer timely appealed to the Court of Common Pleas of Bucks County. At a hearing, DOT agreed to modify Licensee's suspension to reflect one 90–day suspension for the first count, a one-year suspension for the second count, and a two-year suspension for the third count pursuant to Section 13(m) of the Drug Act. However, after an order was entered, the court wrote an opinion and requested this Court to remand the matter for the imposition of three 90–day "first offense" suspensions.[8]

On appeal, this Court determined:

> [T]here is no evidence to support any finding that Licensee's three convictions arose from a single "criminal episode" and therefore only merit a single suspension. Such a finding is an unwarranted expansion of the analysis in [*Department of Transportation, Bureau of Driver Licensing v. Perruso*, 160 Pa. Cmwlth. 49, 634 A.2d 692 (1993)]. In that case, consideration of whether the licensee's multiple violations arose from a single criminal act was only relevant for determining whether to apply the *enhancement* provisions of Section 13(m)(2) and (3), and not whether a penalty should be imposed in the first instance. Here, the Licensee committed three separate and distinct acts on three different days that resulted in three separate violations of the Drug Act. The fact that the circumstances on each separate occasion were similar and within a

---

8. DOT's original notice suspended Licensee's driving privileges for five years in accordance to Section 1542 of the Code, 75 Pa.C.S. § 1542. Licensee also received a second notice that his license would be suspend for six months and for one year pursuant to Section 1542(c) of the Code, 75 Pa.C.S. § 1542(c). DOT admitted that these sections of the Code were inapplicable, and agreed to modify Licensee's suspension accordingly. *Lauer*, 666 A.2d at 780 n. 4.

single week, does not require the conclusion that the three convictions arose from the same criminal act, as we held in Perruso. See *Department of Transportation, Bureau of Driver Licensing v. Korenich*, 168 Pa.Cmwlth. 362, 650 A.2d 1141 (1994). (Footnote omitted).

*Lauer*, 666 A.2d at 781–82.

Finally, in *Yadzinski v. Department of Transportation, Bureau of Driver Licensing*, 723 A.2d 263 (1999), Jeffrey D. Yadzinski (Yadzinski) was convicted on April 22, 1996, in the Court of Common Pleas of Lehigh County of two separate violations of Section 13(a)(3) of the Drug Act that occurred on October 31, 1994, and on December 13, 1994. Additionally, on June 7, 1996, Yadzinski was convicted in the Court of Common Pleas of Northampton County for violating Section 13(a)(30) of the Drug Act on October 25, 1994. Upon certification to DOT of Yadzinski's Lehigh County drug conviction, DOT notified Yadzinski by official notice dated July 17, 1996, that his operating privilege was being suspended for six months pursuant to Section 1532(c) of the Vehicle Code. Similarly, upon receipt of certification of Yadzinski's Northampton County drug conviction, DOT notified Yadzinski by official notice dated August 21, 1996, that his operating privilege was being suspended for two years as required by Section 1532(c) of the Vehicle Code.

On appeal, this Court further distinguished *Perruso* and its progeny:

Assuming that [Yadzinski's] violations were the result of a single criminal episode but resulted in two separate proceedings and convictions, the issue is whether we should focus on the "single criminal episode" as we did in *Perruso* and *Heisterkamp* and order a single six-month suspension or only consider the number of convictions. In *Perruso* and *Heisterkamp*, we were attempting to define what an "offense" was within the meaning of "conviction for a violation" contained in the then existing Section 13(m) of the Drug Act. We determined that a "single criminal episode" was the "offense"—not the "counts" charged resulting in the conviction. In effect, we were stating that the focus was on the "offense" and not on the conviction that resulted from those offenses. In this case, however, while we may have a single criminal episode, unlike *Perruso* and *Heisterkamp*, we also have two separate convictions.

*Yadzinski*, 723 A.2d at 266–67.

This Court held that "[b]ecause there are two convictions as a result of [Yadzinski's] violations under the Drug Act, the plain language of the Vehicle Code requires that each conviction be treated separately and the 'single criminal episode' analysis is inapplicable." *Yadzinski*, 723 A.2d at 267.

## III. Conclusion

In the line of cases beginning with *Perruso*, this Court has interpreted that Section 13(m) of the Drug Act and Section 1532(c) of the Vehicle Code mandate only one suspension where there is one criminal episode, regardless of whether there were multiple convictions or offenses. Contrary, *Brosius* and its progeny established that separate and distinct criminal episodes mandate separate consecutive suspensions pursuant to Section 13(m) of the Drug Act and Section 1532(c) of the Vehicle Code.

█ In the present controversy, this Court must conclude that the trial court improperly applied *Brosius* and its progeny. Clearly, in *Brosius, Lauer*, and *Yadzinski* the licensee's "multiple first offenses" of the Drug Act were based on separate and distinct acts for which separate consecutive suspensions were appro-

priate. Unlike *Brosius* and its progeny, a review of this record indicates that Fréundt was charged with 16 counts of unlawful acquisition of 16 distinct controlled substances over a three and one-half month period (June 30, 1997, through October 16, 1997).

There is no dispute that Freundt's violations of the Drug Act were appropriately treated as a "first offense" for purposes of license suspension pursuant to 1532(c) of the Code. *See* Trial Court Opinion, November 13, 2001, at 4 n. 1. Accordingly, the question is whether DOT was able to establish that Freundt's "first offense" was a result of separate and distinct acts that mandate consecutive license suspensions. The record before this Court fails to support DOT's position that Freundt's violations constituted "multiple first offenses." [9] The record does not reflect whether the unlawful acquisitions took place at one time, or whether resort to the "three and one-half month period" cited in the Criminal Information was because the substances were inventoried during this period. Regardless, there were no separate or distinct dates set forth in the individual counts, so it is just as likely as not that the 16 violations occurred during a single criminal episode. Criminal Information at 1–4; R.R. at 52a–55a.

Accordingly, we reverse.[10]

Senior Judge DOYLE dissents.

### ORDER

AND NOW, this 30th day of July, 2002, the order of the Court of Common Pleas of Carbon County in the above captioned matter is reversed.

---

9. This Court disagrees with the trial court's conclusion that "[i]t is [Freundt's] burden to show how the violations are related." Trial Court Opinion, November 13, 2001, at 12. DOT failed to establish that Freundt's criminal activity constituted more than a single criminal episode. *Commonwealth of Pennsyl-* *vania v. Bracalielly*, 540 Pa. 460, 475–77, 658 A.2d 755, 763 (1995).

10. Because of this Court's resolution of the first issue, we need not address the merits of whether Freundt's right to equal protection was violated.