17 A.3d 320

**Dale Lamar STRAWN, Appellant**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellee.**

Supreme Court of Pennsylvania.

Argued May 11, 2010.

Decided Jan. 19, 2011.

483

Stephen G. Heckman, Borek and Heckman, Blue Bell, for Dale Lamar Strawn.

Terrance M. Edwards, PA Department of Transportation, Harrisburg, for Department of Transportation.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice TODD.

In this appeal by allowance, we address the question of whether the imposition of multiple operating privilege suspensions under 75 Pa.C.S.A. § 1532(b), for multiple violations of the Motor Vehicle Code,[1] are appropriate where the violations occurred during a single criminal episode. For the reasons

1. 75 Pa.C.S.A. §§ 101 *et seq.*

that follow, we affirm the decision of the Commonwealth Court upholding multiple suspensions under these circumstances.

Appellant, Dale Lamar Strawn, was arrested on September 18, 2007 in Hilltown Township, Bucks County, Pennsylvania following a police chase and was charged with various offenses under the Motor Vehicle Code. On February 1, 2008, Appellant pled guilty to: (1) driving under the influence; (2) failing to stop after an accident involving damage to attended vehicle or property; (3) reckless driving; and (4) fleeing a police officer.[2] By separate notices dated March 3, 2008, the Pennsylvania Department of Transportation, Bureau of Driver Licensing ("PennDOT") notified Appellant that his operating privileges had been suspended for an aggregate of three years, pursuant to 75 Pa.C.S.A. § 1532(b) (stating that PennDOT shall suspend a driver's operating privileges upon receiving notice of a driver's "conviction of . . . any [enumerated] offense"). Specifically, the notices informed Appellant that his operating privileges had been suspended as follows: (1) for his conviction of driving under the influence, a one-year suspension; (2) for his conviction of fleeing a police officer, a one-year suspension; (3) for his conviction of reckless driving, a six-month suspension; and (4) for his conviction of failing to stop at an accident, a six-month suspension.

 Appellant did not challenge his one-year suspension for driving under the influence, but appealed his other suspensions to the Court of Common Pleas of Bucks County. On appeal, Appellant argued that only one suspension was appropriate because all of his offenses arose from a single criminal episode, citing *Freundt v. Commonwealth, Dep't of Transp.,* 584 Pa. 283, 883 A.2d 503 (2005), and *Drabic v. Commonwealth, Dep't of Transp.,* 588 Pa. 670, 906 A.2d 1153 (2006).[3] The trial court rejected this argument, upholding all of Appellant's suspensions. Appellant appealed to the Commonwealth Court, which affirmed. Appellant petitioned this Court for

2. 75 Pa.C.S.A. §§ 3802(b), 3743(a), 3736(a), and 3733(a), respectively.

3. The Commonwealth does not dispute that Appellant's motor vehicle violations arose during a single criminal episode, but, as discussed below, contends that multiple suspensions are nonetheless warranted.

review, which we granted, to decide whether multiple operating privilege suspensions under Section 1532(b) are appropriate where they arise from multiple violations of the Motor Vehicle Code committed during a single criminal episode.

By way of background, while the instant challenge under Section 1532(b) presents an issue of first impression for this Court, we have addressed multiple operating privilege suspensions under different subsections of Section 1532 in two prior decisions: *Freundt* and *Drabic*. In *Freundt*, we held that, for purposes of license suspensions issued pursuant to Section 1532(c)[4] relating to violations of the Controlled Substances Act,[5] only a single suspension is appropriate where multiple violations arise from a single criminal episode. *Freundt*, 584 Pa. at 291, 883 A.2d at 507. In that case, Freundt, while employed as a pharmacist, misappropriated drugs from her employer. *Id.* at 285, 883 A.2d at 504. She pled guilty to 16 counts of acquiring or obtaining a controlled substance by misappropriation, fraud, forgery, deception, or subterfuge. *Id.* PennDOT mailed 16 separate notices to Freundt informing her that her operating privileges had been suspended pursuant to Section 1532(c). Freundt challenged 15 of the suspensions on the ground that all the violations arose from the same criminal episode, for which, she contended, only a single suspension was appropriate. *Id.* at 286, 883 A.2d at 504. The trial court found that the violations constituted

---

**4.** This section states, in relevant part:

(c) **Suspension.**—The department shall suspend the operating privilege of any person upon receiving a certified record of the person's conviction of any offense involving the possession, sale, delivery, offering for sale, holding for sale or giving away of any controlled substance under the laws of the United States, this Commonwealth or any other state....

. (1) The period of suspension shall be as follows:

(i) For a first offense, a period of six months from the date of the suspension.

(ii) For a second offense, a period of one year from the date of the suspension.

(iii) For a third and any subsequent offense thereafter, a period of two years from the date of the suspension.

75 Pa.C.S.A. § 1532(c)(1).

**5.** 35 P.S. §§ 780–101 *et seq.*

multiple criminal episodes, and therefore supported multiple suspensions. The Commonwealth Court reversed. *Freundt v. Commonwealth, Dep't of Transp.*, 804 A.2d 706 (Pa.Cmwlth. 2002). Citing its own precedent, the Commonwealth Court concluded that only separate and distinct criminal episodes warranted separate suspensions. *Id.* at 706. As the record did not reflect whether Freundt misappropriated the drugs at one time or over a series of acquisitions, the court concluded that the trial court erred in upholding multiple suspensions. *Id.* PennDOT thereafter petitioned this Court for review.

In a 4–3 decision, we affirmed the Commonwealth Court. In a majority opinion authored by Chief Justice Cappy, we reasoned that Section 1532(c)'s language—that the department shall suspend the operating privileges of an individual upon that individual's "conviction of any offense"—"shows that the statute imposes a suspension not merely for each conviction for every violation of the Crimes Code, but for each conviction stemming from a criminal episode." *Freundt*, 584 Pa. at 290, 883 A.2d at 506. We reasoned that, if the legislature intended to impose a suspension for each conviction, the statute "would only contain the word 'conviction' throughout. . . . Instead, the statute is triggered by the entire phrase 'conviction of any offense.'" *Id.* at 290, 883 A.2d at 506–07. Additionally, we noted the lengths of the suspensions varied depending on whether the violation was a "first offense," "second offense," or "third or subsequent offense." *Id.* at 290, 883 A.2d at 507. We concluded it was "logical that a graduation of penalties would apply for those who have committed offenses on more than one occasion, necessitating a greater license suspension." *Id.* Accordingly, we held, "since a conviction of an offense is a conviction stemming from a criminal episode, an offense for the purpose of § 1532(c) is a single criminal episode." *Id.*

Justice Saylor dissented, maintaining that an offense is simply a violation of the law, and a single criminal episode could involve multiple offenses. *Id.* at 292, 883 A.2d at 508 (Saylor, J., dissenting). As such, Justice Saylor saw no reason to construe "offense" to mean "single criminal episode," and

would have upheld the multiple suspensions. *Id.* Justice Eakin also penned a dissenting opinion, joined by Justice Newman, wherein he contended that the majority effectively imposed on the Commonwealth the burden to prove the offenses arose out of multiple criminal episodes. *Id.* at 293, 883 A.2d at 508 (Eakin, J., dissenting). Justice Eakin opined that, rather, the burden should be on the party claiming the offenses arose from a single criminal episode. *Id.* Justice Eakin also agreed with Justice Saylor that the majority's reading of Section 1532(c) was strained, reasoning that, under Section 1532(c), the operative act mandating the suspension was the commission of an offense, while the notice of conviction merely triggered PennDOT's duty to impose the suspension. *Id.* at 293, 883 A.2d at 509. Therefore, Justice Eakin concluded multiple offenses should result in multiple suspensions, regardless of whether they arose from a single criminal episode. Justice Eakin viewed this result as consistent with *Frontini v. Commonwealth, Dep't of Transp.*, 527 Pa. 448, 593 A.2d 410 (1991), where this Court held, under 75 Pa.C.S.A. § 1542, a driver could not be classified as a habitual offender where three deaths resulted from one accident because Section 1542 specifically stated the convictions had to arise from separate acts. *Freundt*, 584 Pa. at 295, 883 A.2d at 510. Justice Eakin noted Section 1532(c) did not mandate that separate suspensions arise from separate acts, thereby allowing multiple suspensions for multiple violations arising from a single episode. *Id.*

One year later, our Court decided *Drabic*. In that case, Drabic was involved in an automobile accident resulting in the death of the passenger in his vehicle, and he pled guilty to 14 offenses, including homicide by vehicle while driving under the influence ("homicide by vehicle–DUI"). *Drabic*, 588 Pa. at 672, 906 A.2d at 1154. PennDOT issued 14 separate notices of suspension pursuant to 75 Pa.C.S.A. § 1532(a) and (a.1),[6] and

---

6. These sections provide, in relevant part:

(a) **One-year suspension.**—The department shall suspend the operating privilege of any driver for one year upon receiving a certified record of the driver's conviction of or an adjudication of delinquency based on any of the following offenses:

Drabic appealed 12 of them. *Id.* at 673–74, 906 A.2d at 1155. He did not challenge the suspension imposed for his homicide by vehicle-DUI offense, but argued, because his other criminal offenses were lesser included offenses and merged with homicide by vehicle-DUI for sentencing, his operating privilege suspensions should likewise have merged. *Id.* The trial court agreed, in part, and merged his suspensions stemming from DUI and aggravated assault by vehicle-DUI into his suspension for homicide by vehicle-DUI, and also merged his reckless driving suspension with his homicide by vehicle suspension. *Id.* at 674, 906 A.2d at 1155. PennDOT appealed, and the Commonwealth Court affirmed in part and reversed in part.[7] *Commonwealth, Dep't of Transp., Bureau of Driver Licensing v. Drabic,* 738–739 CD 2005, 883 A.2d 730 (Pa. Cmwlth. September 9, 2005). The Commonwealth Court affirmed the trial court's merger analysis, relying on *Zimmerman v. Commonwealth, Dep't of Transp.,* 759 A.2d 953 (Pa.

(1) Any felony in the commission of which a court determines that a vehicle was essentially involved.

(2) Deleted by 2002, Oct. 4, P.L. 845, No. 123, § 2, effective in 60 days.

(3) Any violation of the following provisions:

Section 3735.1 (relating to aggravated assault by vehicle while driving under the influence).

Section 3742 (relating to accidents involving death or personal injury).

Section 3742.1 (relating to accidents involving death or personal injury while not properly licensed).

Section 7111 (relating to dealing in titles and plates for stolen vehicles).

Section 7121 (relating to false application for certificate of title or registration).

Section 7122 (relating to altered, forged or counterfeit documents and plates).

(a.1) **Three-year suspension.**—The department shall suspend the operating privilege of any driver for three years upon receiving a certified record of the driver's conviction of or an adjudication of delinquency based on a violation of any of the following offenses:

(1) Any violation of section 3732 (relating to homicide by vehicle).

(2) Any violation of section 3735 (relating to homicide by vehicle while driving under influence).

75 Pa.C.S.A. § 1532(a), (a.1).

7. The panel reversed the trial court in part, finding that it should have imposed an additional six-month suspension for reckless driving, but affirmed all other aspects of the trial court's opinion.

Cmwlth.2000), wherein it held, because the sentences for the underlying criminal convictions merged, the collateral civil consequences likewise merged. *Drabic,* 738–739 CD 2005, at 5.

On appeal to this Court, we affirmed in another 4–3 decision, with the majority opinion authored by Justice Baldwin. We specifically accepted review in order to address "whether collateral civil consequences of criminal acts, in this instance suspensions of operating privileges . . ., should be merged to accord with the merger of the underlying criminal convictions from which the collateral civil consequences flow." *Drabic,* 588 Pa. at 672, 906 A.2d at 1154. Prior to addressing the merger doctrine, however, we opined on the implications of *Freundt's* single criminal episode analysis. We observed that Sections 1532(a) and (a.1) used "conviction for any offense" language similar to Section 1532(c) which was at issue in *Freundt,* and we saw no reason to depart from the analysis in *Freundt. Drabic,* 588 Pa. at 677, 906 A.2d at 1157. Thus, we concluded the single criminal episode analysis applied to Drabic's operating privilege suspensions.

We then went on to address the question on which we accepted review: whether merger applied in this civil context. We conceded that the doctrine of merger found its roots in the double jeopardy provisions of the United States and Pennsylvania Constitutions, but noted that the Commonwealth Court had applied merger in the related context of calculating points on a license. *Id.* at 680, 906 A.2d at 1159 (citing *Commonwealth, Dep't of Transp. v. Maddesi,* 138 Pa.Cmwlth. 467, 588 A.2d 580 (1991)). Based principally on our determination that "the Legislature articulated no proscription against collateral civil consequences merging along with the underlying criminal convictions," we upheld the Commonwealth Court's conclusion that the operating privilege suspensions merged. *Id.*

Justice Saylor dissented, arguing that *Freundt* was not controlling as it was decided in a different context, involving a separate subsection of Section 1532. *Id.* at 689, 906 A.2d at 1164 (Saylor, J., dissenting). Justice Saylor reasoned the legislature was more explicit in subsections (a) and (a.1) than

in subsection (c), as (a) and (a.1) delineated specific violations to which a suspension was to attach. *Id.* at 690, 906 A.2d at 1164. Moreover, Justice Saylor noted subsections (a) and (a.1) stated that "any violation" of the listed offenses would result in a suspension. *Id.* Therefore, he concluded that *Freundt* did not control the outcome of *Drabic,* and that Drabic's suspensions should not have merged because he committed multiple violations of the offenses listed in Section 1532(a) and (a.1).

Justice Newman also authored a dissenting opinion, joined by Justice Eakin, wherein she reasoned that the plain language of Sections 1532(a) and (a.1) indicated merger was not appropriate. *Id.* at 681, 906 A.2d at 1159 (Newman, J., dissenting). Justice Newman took issue with the majority's reasoning that applying the merger doctrine was permissible because Section 1532 contained no prohibition against it, arguing instead that the Court should read the legislature's silence regarding the merger doctrine as an indication it should not apply. *Id.* at 682, 906 A.2d at 1160. Regarding the majority's reliance on *Freundt,* Justice Newman reiterated her disagreement with that decision, and joined Justice Saylor's conclusion that *Freundt* was distinguishable from *Drabic.*

In the instant case, the Commonwealth Court relied heavily on its opinion in *Reinhart v. Commonwealth, Dep't of Transp.,* 946 A.2d 167 (Pa.Cmwlth.2008). In *Reinhart,* the licensee was convicted of three motor vehicle violations stemming from one automobile accident. He received three separate license suspensions pursuant to 75 Pa.C.S.A. § 3804(e)(1)(i)[8] and 75 Pa.C.S.A. § 1532(a) and (b), but, on appeal to the court of common pleas, only the suspension pursuant to Section 3804(e)(1)(i) was sustained. PennDOT appealed to the Com-

---

8. This section reads:

(e) Suspension **of operating privileges upon conviction.**-
(1) The department shall suspend the operating privilege of an individual under paragraph (2) upon receiving a certified record of the individual's conviction of or an adjudication of delinquency for: (i) an offense under section 3802 [concerning driving under the influence].

75 Pa.C.S.A. § 3804(e)(1)(i).

monwealth Court, which reversed. *Reinhart*, 946 A.2d at 169. The court examined *Freundt* and *Drabic*, and concluded the distinction between those decisions was whether the underlying convictions were unrelated to the operation of a motor vehicle—namely, drug offenses—, as in *Freundt*, or whether the underlying crimes constituted moving violations, as in *Drabic*. *Reinhart*, 946 A.2d at 170–71. Based on this distinction, the Commonwealth Court determined *Freundt* stood for the proposition that the single criminal episode analysis should be undertaken only where the suspension is pursuant to Section 1532(c), which authorizes suspensions for violations of the Controlled Substances Act. Similarly, the court reasoned, where the suspensions were imposed for moving violations, such as under Section 1532(a) and (a.1), *Drabic's* merger analysis applied. The court opined, if *Freundt's* single criminal episode analysis applied to all subsections of Section 1532, our Court would not have engaged in the merger analysis in *Drabic*. *Reinhart*, 946 A.2d at 171. After navigating this caselaw, the court concluded multiple suspensions were appropriate because Reinhart's crimes constituted moving violations and were not lesser included offenses.

Turning to the instant case, the Commonwealth Court reaffirmed its reasoning in *Reinhart*. The court concluded the single criminal episode analysis is appropriate only where the suspensions stem from Section 1532(c), and, otherwise, a merger analysis is appropriate. *Strawn*, 976 A.2d at 665. The court went on to note that Appellant's crimes constituted moving violations, and did not merge for sentencing because none of Appellant's offenses were lesser included offenses. Therefore, the court concluded that separate suspensions were warranted. *Id.*

Judge Pellegrini authored a dissent, joined by Judge Smith–Ribner, wherein he maintained that *Drabic* adopted the single criminal episode analysis for all subsections of Section 1532. Specifically, Judge Pellegrini referenced our statement in *Drabic* that we "need not directly address [the] question [of whether merger applies], since we believe the plain language of the statute directs that only a single suspension can be

imposed based upon a single criminal episode." *Id.* at 666 (Pellegrini, J., dissenting) (quoting *Drabic,* 588 Pa. at 675, 906 A.2d at 1156 (emphasis omitted)). Judge Pellegrini viewed the merger analysis in *Drabic* as *dicta,* and thus not controlling. He concluded the single criminal episode analysis applied to all of Section 1532, and, therefore, would have disallowed Appellant's multiple suspensions.

We now address the arguments of the parties before this Court. Appellant asserts this case is controlled by *Freundt* and *Drabic.* Appellant reads *Drabic* as unequivocally extending the single criminal episode analysis to all subsections of Section 1532, pointing to our preliminary conclusion in that case, prior to addressing the question of whether merger applied, that only a single suspension could be imposed for a single criminal episode. Brief of Appellant at 15. Appellant points out that *Drabic* involved different subsections than *Freundt,* and yet the Court nonetheless indicated that the single criminal episode analysis was equally applicable. Appellant acknowledges that *Drabic's* reliance on a merger analysis was "troublesome," but dismisses that portion of the opinion as *dicta,* echoing Judge Pellegrini's dissent below. Brief of Appellant at 17. Reading *Drabic* in this way, Appellant argues that the single criminal episode analysis applies in this case, even though his suspensions arise under Section 1532(b). Appellant observes that Section 1532(b) contains "conviction of any offense" language similar to the subsections at issue in *Freundt* and *Drabic,* and argues the Commonwealth Court, therefore, had no reason to depart from the single criminal episode analysis. Brief of Appellant at 17. Appellant also calls for this Court to overrule the Commonwealth Court's prior decision in *Reinhart,* as, according to Appellant, it too is contrary to the holdings in *Freundt* and *Drabic.* Brief of Appellant at 19.

PennDOT begins its argument by contending that one of the primary goals of the General Assembly in enacting legislation mandating operating privilege suspensions for violations of the Motor Vehicle Code was to protect the public from drivers who have demonstrated an inability, or unwillingness, to drive

safely and in accordance with the law. Brief of Appellee at 7. PennDOT claims that license suspensions encourage licensed drivers to drive safely, keep violators off the roadways for a period of time, and impress upon them the seriousness of obeying the traffic laws. PennDOT reads *Drabic* as holding that the merger analysis applied in *Zimmerman* supplies the appropriate test to use when faced with multiple moving violations occurring in the same accident. Brief of Appellee at 10. *Freundt* is distinguishable, PennDOT avers, because its holding that only one suspension is permissible for each criminal episode is limited to suspensions stemming from Section 1532(c), adding that this is appropriate because sub-section (c) addresses violations of the Controlled Substances Act, which, it contends, have nothing to do with the safe operation of a vehicle. Brief of Appellee at 11. In contrast, the crimes at issue here, as in *Drabic* and *Reinhart*, involve violations of the Motor Vehicle Code, and have a direct impact on driver safety. PennDOT reasons that, if the single crimi-nal episode analysis were applied to moving violations, drivers would have no reason to refrain from committing multiple traffic violations, as only one suspension could be imposed. Finally, with respect to merger, PennDOT asserts Appellant's violations constitute separate offenses under the Motor Vehi-cle Code which are not lesser included offenses. As such, PennDOT submits, separate suspensions are appropriate for each violation. With these arguments in mind, we turn to our examination of the issue presented.

 Before us is the proper construction of Section 1532(b), which presents a pure question of law. Accordingly, our standard of review is *de novo,* and our scope of review is plenary. *Commonwealth v. Bavusa,* 574 Pa. 620, 632, 832 A.2d 1042, 1049 (2003). In interpreting a statutory provision, Section 1903 of the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1903, directs that we give effect to the intention of the General Assembly by affording plain meaning to the words and phrases used in the statute. Further, every statute

should be construed to give effect to all its provisions. 1 Pa.C.S.A. § 1921.

Section 1532(b) provides:

**(b) Suspension.—**

(1) The department shall suspend the operating privilege of any driver for six months upon receiving a certified record of the driver's conviction of or an adjudication of delinquency based on any offense under the following provisions:

Section 3367 (relating to racing on highways).

Section 3714(b) (relating to careless driving).

Section 3734 (relating to driving without lights to avoid identification or arrest).

Section 3736 (relating to reckless driving).

Section 3743 (relating to accidents involving damage to attended vehicle or property).

(2) The department shall suspend the operating privilege of any driver for six months upon receiving a certified record of the driver's conviction of a subsequent offense under section 1501(a) (relating to drivers required to be licensed) if the prior offense occurred within five years of the violation date of the subsequent offense.

(3) The department shall suspend the operating privilege of any driver for 12 months upon receiving a certified record of the driver's conviction of section 3733 (relating to fleeing or attempting to elude police officer) or a substantially similar offense reported to the department under Article III of section 1581 (relating to Driver's License Compact), or an adjudication of delinquency based on section 3733. The department shall suspend the operating privilege of any driver for six months upon receiving a certified record of a consent decree granted under 42 Pa.C.S. Ch. 63 (relating to juvenile matters) based on section 3733.

75 Pa.C.S.A. § 1532(b).

■ Construing this language, we conclude that each violation of any offense identified in Section 1532(b) will trigger a separate license suspension. The fact that the General As-

sembly separately listed the offenses to which a license suspension will attach and mandated that PennDOT suspend the operating privileges of any driver for "any offense" under those provisions is indicative of its intent to impose a suspension for each separate violation. Indeed, the various subsections of Section 1532(b) impose different lengths of suspensions depending on which Motor Vehicle Code provision the driver violated.[9] For example, Appellant's 12–month suspension for fleeing a police officer was required by subsection (b)(3), while his two 6–month suspensions were required pursuant to subsection (b)(1). It would strain the plain meaning of Section 1532(b) to conclude that only one suspension is appropriate for multiple offenses where the statute imposes different lengths of suspensions for distinct Motor Vehicle Code provisions. If we were to adopt Appellant's argument, the length of his single suspension would be unclear because, in cases such as this one, multiple subsections of Section 1532(b) are implicated, and the statute provides no indication of how courts would resolve these conflicting directives. *See* 1 Pa.C.S.A. § 1921 ("Every statute shall be construed, if possible, to give effect to all its provisions."). Accordingly, we conclude Section 1532(b) imposes multiple operating privilege suspensions for the commission of multiple offenses.

In so holding, we reject Appellant's reliance on *Freundt* and *Drabic*. While it is true that *Freundt* imposed a single criminal episode analysis on suspensions stemming from Section 1532(c), that subsection involves offenses under the Controlled Substances Act rather than the Motor Vehicle Code. As PennDOT notes, violations of the Controlled Substances Act do not directly relate to traffic safety, while violations of the Motor Vehicle Code directly impact driver and traffic safety. Moreover, as PennDOT argues, employing a single criminal episode analysis for Motor Vehicle Code violations would, in effect, provide drivers a "volume discount," and thereby encourage, rather than discourage, the commission of

---

**9.** We recognize that the statute at issue in *Drabic* possessed similar characteristics to Section 1532(b), and we examine *Drabic, infra.*

multiple traffic offenses. Thus, this case is readily distinguishable from *Freundt.*

With respect to *Drabic*, we recognize that our decision therein extends *Freundt's* holding beyond Section 1532(c). However, the question on which we granted review in *Drabic* was not whether the single criminal episode analysis applied, but, rather, whether the merger doctrine applied in the civil arena of operating privilege suspensions. *See Drabic*, 588 Pa. at 672, 906 A.2d at 1154 ("The issue presented in this case is whether collateral civil consequences of criminal acts, in this instance suspensions of operating privileges ..., should be merged to accord with the merger of the underlying criminal convictions from which the collateral civil consequences flow."). Although the Court's majority in *Drabic* discussed *Freundt*, the single criminal episode analysis was a digression and not germane to the disposition of the principal question before the *Drabic* court. Critically, as explained above, and as argued by PennDOT, the single criminal episode analysis is inappropriate outside of subsection (c) due to the fact subsection (c) involves offenses under the Controlled Substances Act, rather than the Motor Vehicle Code, and applying the single criminal episode analysis to moving violations would encourage, rather than discourage, the commission of multiple traffic offenses. Therefore, although *Drabic* extends the single criminal episode analysis beyond Section 1532(c), that extension is hereby rejected.[10]

Having concluded that the single criminal episode analysis does not apply to the circumstances of this case, we hold that the imposition of multiple operating privilege suspensions for Appellant's violations of multiple Motor Vehicle Code provisions is appropriate. Accordingly, we affirm the decision of the Commonwealth Court upholding multiple operating privilege suspensions. Jurisdiction relinquished.

10. *Drabic's* merger analysis is inapplicable herein because Appellant does not challenge the Commonwealth Court's conclusion, echoed by PennDOT in its brief before this Court, that his suspensions are not subject to merger as none of his offenses are lesser included offenses.

Chief Justice CASTILLE, Justices EAKIN, BAER, McCAFFERY and ORIE MELVIN join the opinion.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR, concurring.

As I understand the majority opinion, it limits the single-criminal-episode overlay of *Freundt v. PennDOT*, 584 Pa. 283, 883 A.2d 503 (2005), to one subsection of Section 1532—despite the materially identical terms of other subsections of the same statute—thus disapproving the first line of reasoning employed in *Drabic v. PennDOT*, 588 Pa. 670, 906 A.2d 1153 (2006). The rationale is that *Freundt* is "readily distinguishable," Majority Opinion, at 495–96, 17 A.3d at 328, based on various factors remote from the core statutory terms.

As Appellant highlights, side-by-side, the controlling terms in this case, and those from *Freundt*, are:

The department shall suspend the operating privilege of any driver ... upon receiving a certified record of the driver's conviction of ... any *offense* under the following provisions. . . .

\* \* \*

The department shall suspend the operating privilege of any person upon receiving a certified record of the person's conviction of any *offense* involving. . . .

75 Pa.C.S. § 1532(b)(1), (c) (emphasis added).

While *Freundt* may be distinguishable from the present case for the various reasons referenced by the majority, *see* Majority Opinion, at 494–96, 17 A.3d at 328–29, and perhaps for several others, it is not distinguishable on the material, operative language of the relevant statutory provisions.[1]

1. In terms of the distinctions drawn by the majority, while it indicates that the Legislature did not envision a "volume discount" for traffic offenses, Majority Opinion, at 495, 17 A.3d at 328, no explanation has been provided as to why such a discount was intended for drug offenses. Moreover, there is no evidence that the Legislature shares the majority's view that drug offenses are remote from roadway safety concerns. *See id.* at 494–96, 17 A.3d at 328–29 (indicating that "violations of the Controlled Substances Act do not directly relate to traffic

*Freundt's* continued longevity means this Court will maintain that the Legislature meant "offense" when it said "offense" in the first of these substantively identical passages, but it meant something entirely different—namely, a criminal episode, or some larger collection of offenses—when it said "offense" in the second passage. I continue to find such a reading of these parallel, sequential provisions to be untenable as a matter of statutory interpretation. *See Freundt,* 584 Pa. at 292, 883 A.2d at 508 (Saylor, J., dissenting).

I dissented in both *Freundt* and *Drabic,* because I believed (and believe) they both represented material departures from conventional statutory interpretation. *See Freundt,* 584 Pa. at 292, 883 A.2d at 508 (Saylor, J., dissenting); *Drabic,* 588 Pa. at 689–90, 906 A.2d at 1164–65 (Saylor, J., dissenting). I also maintain the concern that these types of deviations from a statute's plain terms are deleterious, in that they substantially widen the pathways for differences regarding otherwise straightforward language used by the Legislature, thus unduly complicating both the processes of legislative drafting and the ensuing judicial review.

safety"). Indeed, the opposite view can be easily maintained, particularly given the pervasiveness of automobiles in our society and the General Assembly's zero-tolerance approach to the presence of Schedule I, II, or III controlled substances in an individual's blood while driving (with no actual impairment being required). *See* 75 Pa.C.S. § 3802(d)(1).

Finally, the majority offers a valid observation concerning the graduation of suspension periods attaching to different offense categories under Section 1532(b)'s subparts. *See* Majority Opinion, at 495–96, 17 A.3d at 328. Nevertheless, there should be little doubt that—had Legislature believed "offense" meant "single criminal episode" as *Freundt* holds—it would have envisioned a suspension commensurate with the most serious offense committed (since the alternative is a magnified volume discount). Thus, I do not share the majority's uncertainty in this regard. *See id.* Alternatively, under a *Freundt*-based rationale, a close parallel easily could be drawn between each individual subpart of Section 1532(b) and Section 1532(c), so that, for example, Appellant would receive only a single 6–month suspension for his two Section 1532(b)(1) offenses deriving from the same criminal episode.

My point is not that any of these scenarios represents an accurate depiction of the legislative design. Again, it is only that Section 1532(b) is not so readily distinguishable from Section 1532(c) in light of the substantially identical core, operative language.

I regard both *Freundt* and *Drabic* as candidates for overruling consistent with the established exception to *stare decisis* applicable to decisions which are not adequately supported in reason. The impediment here is that PennDOT has now accepted *Freundt* for the limited purpose of Section 1532(c), and, more broadly, *Drabic's* merger analysis.

PennDOT's approach perhaps reflects a pragmatic recognition that courts often seem to prefer limiting such problematic judicial decisions as closely as possible over outright disavowals of their own previous decisions. *See generally* Jeff Todd, *Undead Precedent: The Curse of a Holding "Limited to Its Facts"*, 40 Tex. Tech L.Rev. 67, 74 (2007). In the circumstances, as to *Freundt,* I must agree that the limiting the single-criminal-episode overlay to Section 1532(c) does seem to be the best of the options presently made available to the Court. For my part, however, I would anchor the justification more solidly in *Freundt's* shortcomings relative to the central, controlling statutory terms, rather than in more tangential distinguishing characteristics.