J-S20039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK BIGGS A/K/A SALADINE | : | |
| SWEETS, | : | |
| | : | No. 3558 EDA 2015 |
| Appellant | : | |

Appeal from the Judgment of Sentence July 22, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0015926-2013

BEFORE:   BOWES, J., OTT, J. and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.:                              **FILED MAY 12, 2017**

Mark Biggs a/k/a Saladine Sweets (hereinafter "Biggs"), appeals from the judgment of sentence entered on July 22, 2015, in the Philadelphia County Court of Common Pleas.  The trial court sentenced Biggs to an aggregate term of 15 to 30 years' imprisonment following his jury conviction of attempted murder, criminal conspiracy, and violations of the Uniform Firearms Act.[1]  On appeal, Biggs challenges the sufficiency of the evidence supporting his convictions, the court's jury charge on identification, and the discretionary aspects of his sentence.  For the reasons below, we affirm.

The trial court aptly summarized the facts underlying Biggs' conviction as follows:

_____

[1] **See** 18 Pa.C.S. §§ 901, 903, and 6101 et seq., respectively.

On June 17, 2013, around nine o'clock in the evening, Lakeisha Jessie was with her sons Sahih Johnson and Jahih Yates in North Philadelphia. Sahih asked his mother if he could spend the night at a friend's house. When Lakeisha said no, Sahih called her a "bitch." After this disagreement, Lakeisha's nephew Robert Jackson walked by, and Lakeisha asked him to "beat up" Sahih for disrespecting her. Robert continued the physical confrontation with Sahih until Lakeisha told him to stop.

Later that evening, Robert and Sahih encountered one another and began fighting again. Lakeisha then noticed that her son Jahih's father, Monroe Yates (hereinafter, [Yates]), was arguing with Robert as well. At this time Lakeisha called Robert's mother, her sister Kimberly Jessie, to pick up her son. When Lakeisha told [Yates] to leave Robert alone, he walked away towards Franklin Street.

Kimberly Jessie was with friends nearby on 10th Street when Lakeisha called her. As she walked down 9th Street near Pike Street to find her son Robert, Kimberly passed [Yates] and [Biggs]. She stopped to speak to [Yates] about the incident. While they were speaking, Kimberly's sons Robert, Raheim and Tyreek approached them. Raheim said, "Nobody is going to do anything. Nobody is going to touch my family." This made [Biggs] and [Yates] angry, and Kimberly walked them across the street. [Biggs] and [Yates] left together in a white vehicle.

At approximately 10:30 that evening, Officers Dayton Bennett and Joseph Marion responded to a report of shots fired in the area of 9th and Pike Streets. The initial call reported five or six shots fired. Upon arrival, the officers found a group of around 20 people gathered in the area. They also saw Kimberly Jessie lying on the curb between Percy and Delhi Streets. She had been shot and was in distress, screaming "They tried to shoot my son. They tried to shoot my son. The mother f-ers tried to shoot my son." Kimberly testified that she was shot in the right thigh, and that the bullet entered from the back and exited the front of her leg.

Lakeisha Jessie was also at the scene and spoke to Officer Marion when he arrived. Lakeisha identified [Biggs] and [Yates] as the shooters to Officer Marion at this time. Once Kimberly was transported to the hospital, Lakeisha was brought to East Detective's Division to make an official statement. Detectives Kahlan and Daley interviewed Lakeisha at about 11:35 PM. At

- 2 -

this time, Lakeisha again identified [Biggs] and [Yates] as the individuals who had shot at her nephew, Raheim Jackson, and his mother Kimberly. She stated that she saw both men holding black handguns.

After being treated for her injuries, Kimberly Jessie was also interviewed by Detectives Kahlan and Daley that night. Detective Daley described her as "hysterical. She was in a lot of pain. She was upset, angry, a lot of emotions." Kimberly had brought the jeans she had been wearing to the detectives, who placed them on a property receipt. During this interview, Kimberly also identified [Biggs] and [Yates] as the shooters, and circled both of their pictures. She told detectives that she saw each man holding a handgun, one black and one silver. Although the interview was cut short due to the pain Kimberly was in, she was able to review and sign her statement that evening.

Detectives Ellis and McCullough processed the scene of the shooting to search for evidence. After an initial search of the area did not yield any results, they went to Temple University Hospital to speak to Kimberly Jessie, who was still being treated at that time. They learned that she had been shot closer to 9th Street, and returned to the scene to refocus their search. They discovered two fired cartridge casings east of 9th Street, in an area that had not been previously secured as part of the crime scene. The first casing was found under a Chevrolet Impala parked at the southeast corner of 9th and Pike Streets. The second casing was recovered from under a Toyota Corolla in the same area. The Toyota Corolla appeared to have a bullet hole in the hood. Both fired cartridge casings were of the same make and model. Firearms examiner Letitia Cannon examined the fired cartridge casings and concluded that they had been fired from the same firearm.

Another bullet went into the home of Della Jamison at 3900 North Delhi Street, at the corner of Pike Street. Ms. Jamison testified that she had heard what sounded like gunshots that evening, and thought something may have hit her house. Upon going upstairs later that night, she found damage to a hat and perfume bottle. Officer Malcolm Scott investigated Ms. Jamison's house the next day when she reported the damage. In his report, Officer Scott noted that a "possible bullet went through the front bedroom wall, traveled through the middle bedroom, and is lodged in the bedroom wall."

On August 10, 2013, Sergeant Wali Shabazz was making an unrelated car stop at 10th and Butler Streets in the same neighborhood as the shooting and was approached by Kimberly Jessie. After finishing the car stop, Sergeant Shabazz walked over to Kimberly to speak with her. She told him that he should "be looking for the people that shot me," and that she was "scared for myself and my kids." Sergeant Shabazz asked her for the names of the men who shot her, and she responded with [Biggs] and [Yates's] names.

Sergeant Shabazz found a warrant for Monroe Yates [], and went to the address listed at the 3900 block of Franklin Street. When [Yates] came to the door, Sergeant Shabazz, who was in full uniform, told him he was there to respond to a burglary alarm. When [Yates] replied that he did not have an alarm. Sergeant Shabazz excused himself and called for backup. When Sergeant Shabazz returned to the door, [Yates's] wife answered. [Yates] then tried to slam the door on Sergeant Shabazz and ran towards the back of the house. Sergeant Shabazz pursued him to the back door and was able to place [Yates] under arrest.

Sergeant Shabazz remained in touch with Kimberly Jessie regarding [Biggs], whose whereabouts were still unknown at the time. [Biggs] was not present in the City of Philadelphia, and was eventually apprehended by United States Marshalls (sic) on November 8, 2013.

Trial Court Opinion, 6/27/2016, at 2-6 (record citations omitted).

Biggs and Yates were subsequently indicted by a grand jury on charges of attempted murder, criminal conspiracy, persons not to possess firearms, firearms not to be carried without a license, and carrying firearms on public streets in Philadelphia.[2] The cases proceeded to a joint jury trial

_____

[2] 18 Pa.C.S. §§ 901, 903, 6105(a)(1), 6106(a)(1), and 6108, respectively. The co-defendants were also charged with possessing an instrument of crime, but that charge was later *nolle prossed*. **See** 18 Pa.C.S. § 907(a).

commencing on January 21, 2015. At trial, both Kimberly and Lakeisha repudiated their prior statements to police. ***See generally*** N.T., 1/21/2015, at 41-53; N.T., 1/22/2015, at 33-47. Kimberly testified she had "no recollection" of the events shortly before the shooting, or of testifying at the grand jury hearing. N.T., 1/21/2015, at 53-55, 67. Moreover, Lakeisha testified that she did not witness the shooting. N.T., 1/22/2015, at 54. Nevertheless, on January 28, 2015, the jury returned a verdict of guilty on all charges. Sentencing was deferred until July 22, 2015. On that day, represented by new counsel, Biggs was sentenced to an aggregate term of 10 to 20 years' imprisonment.[3]

Biggs filed both a timely motion for reconsideration of sentence, in which he emphasized several mitigating factors, and a post-sentence motion for extraordinary relief, in which he asserted the ineffectiveness of trial counsel for failing to interview critical witnesses and present a claim of self-defense.[4] The motions were denied by operation of law on November 23,

---

[3] Specifically, the court imposed the following sentence: (1) 10 to 20 years for attempted murder; (2) a concurrent 10 to 20 years for conspiracy; (3) a consecutive five to 10 years for persons not to possess firearms; (4) a concurrent three to six years for carrying a firearm without a license; and (5) a concurrent one to two years for carrying a firearm on a public street in Philadelphia.

[4] In the motion, Biggs claimed at least one witness who was not interviewed by police saw Raheim "with a firearm immediately prior to the shooting." Motion for Extraordinary Relief Pursuant to Rule 704(B) and Rule 720(C), 8/3/2015, at ¶ 6.

2015. Thereafter, counsel filed a timely notice of appeal, and a motion to withdraw, stating he had not been retained for purposes of an appeal. **See** Motion to Withdraw as Counsel, 11/24/2015, at ¶ 7. The trial court granted the motion to withdraw and appointed present counsel to represent Biggs on appeal.[5]

In his first issue, Biggs argues the evidence was insufficient to support his convictions of attempted murder and conspiracy.[6] Specifically, he asserts the Commonwealth did not prove he possessed a "specific intent to kill" necessary for his attempted murder conviction, or that he and Yates had a "shared criminal intent" to commit a crime necessary for his conspiracy conviction. Biggs' Brief at 22, 29.

Our review with respect to a sufficiency of the evidence challenge is well-settled:

> The standard we apply … is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner,

---

[5] On December 2, 2015, the court ordered Biggs to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After requesting and being granted an extension of time due to the unavailability of the trial transcripts, Biggs complied with the court's directive on April 2, 2016.

[6] Although Biggs also makes a general assertion that the evidence was insufficient to support his firearms convictions, he fails to elaborate on that claim in his argument. **See** Biggs' Brief at 22. Therefore, we find his objection to those convictions waived. **See Commonwealth v. Bullock**, 948 A.2d 818, 823 (Pa. Super. 2008) (finding claim abandoned when appellant did not develop claim in his brief), *appeal denied*, 968 A.2d 1280 (Pa. 2009). **See also** Pa.R.A.P. 2119(a).

there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Truong*, 36 A.3d 592, 597 (Pa. Super. 2012) (*en banc*) (quotation omitted), *appeal denied*, 57 A.3d 70 (Pa. 2012).

Considering first Biggs' conviction of attempted murder, we note: "A conviction for attempted murder requires the Commonwealth to prove beyond a reasonable doubt that the defendant had the specific intent to kill and took a substantial step towards that goal." *Commonwealth v. Blakeney*, 946 A.2d 645, 652 (Pa. 2008), *citing* 18 Pa.C.S. §§ 901, 2502, *cert. denied*, 555 U.S. 1177 (2009). Moreover, we must bear in mind:

"The Commonwealth may establish the *mens rea* … specific intent to kill, solely from circumstantial evidence." Further, our Supreme Court has repeatedly determined that "[t]he use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill."

*Commonwealth v. Tucker*, 143 A.3d 955, 964 (Pa. Super. 2016) (internal citations omitted), *appeal denied*, ___ A.3d ___, 2017 WL 401331 (Pa. Jan. 30, 2017).

Here, Biggs contends the Commonwealth failed to prove beyond a reasonable doubt that he possessed the requisite specific intent to kill. He argues "the incident that resulted in the shooting apparently was spontaneous and not premeditated. The worst case scenario was that [he] may have intended to injure others, but did not intend to kill them." Biggs' Brief at 25. Biggs emphasizes the "numerous inconsistencies in the testimony presented by the Commonwealth[,]" and proclaims that if he did "in fact, shoot at anyone, it was in self-defense since it was alleged that Raheim Jackson was in possession of a weapon and pointed it in a threatening manner." *Id.* at 23.

Our review of the trial testimony reveals ample support for the jury's verdict. In their statements to police, both Lakeshia and Kimberly stated Biggs and Yates fired numerous shots at Kimberly's son, Raheim. *See* N.T., 1/21/2015, at 47-48 (Kimberly stated Biggs fired "at least five or six shots" and Yates "fired numerous times also"); N.T., 1/22/2015, at 43 (Lakeshia stated she believed Biggs and Yates "both shot four times"). *See also* N.T., 1/22/2015, at 72 (witness Della Jamison testifed she heard "several" gunshots). In fact, Lakeshia told police that Biggs approached Raheim, asked to talk to him for a minute, and then pulled a gun from his waist. *Id.* at 37. She further stated, Biggs "pointed the gun at Raheim and then Raheim ran toward 10th [Street] while [Biggs] was shooting at him." *Id.* Although both Lakeisha and Kimberly disavowed their prior statements at trial, the jury was free to find their later repudiations incredible. *See*

*Truong*, *supra*. Moreover, the jury could infer that the actions of Biggs and Yates, in firing numerous shots at Raheim after having a confrontation with him earlier that evening, evidenced a specific intent to kill. *See Commonwealth v. Manley*, 985 A.2d 256, 272 (Pa. Super. 2009) (evidence that appellant fired multiple shots at the victim, five of which struck the victim although not in a vital organ, was sufficient for the jury to infer the appellant had a specific intent to kill), *appeal denied*, 996 A.2d 491 (Pa. 2010). *See also Commonwealth v. Chambers*, 980 A.2d 35, 47 (Pa. 2009) ("[I]t is well-established in Pennsylvania law that the specific intent to kill can be formed in a fraction of a second, and may be found whenever the defendant acts with a conscious purpose to bring about the death of the victim."), *cert. denied*, 560 U.S. 928 (2010). Accordingly, we find the evidence was sufficient to support Biggs' conviction of attempted murder.

Biggs also challenges his conviction of conspiracy.

> "To sustain a conviction for criminal conspiracy, the Commonwealth must establish the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy."

> > Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Additionally:

> > > An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal

> episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.
>
> Furthermore, "flight, along with other circumstantial evidence, supports the inference of a criminal conspiracy."

*Commonwealth v. Devine*, 26 A.3d 1139, 1147 (Pa. Super. 2011) (internal citations omitted), *appeal denied*, 42 A.3d 1059 (Pa. 2012). *See* 18 Pa.C.S. 903.

Again, our review of the record reveals sufficient evidence to support the jury's verdict. Although Biggs claims the Commonwealth failed to "prove an agreement, a shared criminal intent or a common scheme or plan to commit any crime[,]"[7] we disagree. As the Commonwealth explains in its brief, Biggs "and his conspirator confronted Raheim Jackson together; left together; returned, armed, together; shot at him together; and fled together." Commonwealth's Brief at 11. *See* N.T., 1/22/2015, at 36-40 (Lakeisha's police statement). These facts circumstantially establish Biggs and Yates agreed to kill Raheim, and took a substantial step toward completing their goal. *See Devine*, *supra* (evidence sufficient to support convictions of conspiracy and third degree murder; after confrontation with a group outside his home, appellant retreated into the house, waited for others to arrive with weapons, and then appellant and friends confronted

---

[7] Biggs' Brief at 29.

group, which led to the shooting of a bystander). Accordingly, no relief is warranted on this claim.

Moreover, to the extent Biggs claims he acted in self-defense because "it was alleged that Raheim Jackson was in possession of a weapon and pointed it in a threatening manner,"[8] we emphasize no evidence supporting such a claim was presented at trial. It is well-established that once there is any evidence before the factfinder which supports a claim of self-defense, the Commonwealth bears the burden of disproving the claim beyond a reasonable doubt. *See Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa. Super. 2014). Here, however, Biggs did not testify at trial or present any evidence supporting his assertion that he acted in self-defense.[9] Nor did the Commonwealth's evidence support a self-defense claim. Indeed, both Lakeisha and Raheim, himself, testified that Rahiem did **not** possess or display a gun on the night of the shooting. *See* N.T., 1/22/2015, at 63, 66; N.T., 1/23/2015, at 53. Accordingly, because no evidence was presented to establish Biggs' belated contention that he was defending himself, his self-defense argument necessarily fails.

---

[8] Biggs' Brief at 29.

[9] We note Biggs makes general statements in his brief that Raheim possessed a weapon and pointed it in a threatening manner, without providing any citation to the trial transcript. *See* Biggs' Brief at 8, 29, 30.

Next, Biggs asserts the trial court's identification charge to the jury was erroneous, and as a result, he is entitled to a new trial.

Our review of a challenge to a jury charge is well-settled:

"When reviewing a challenge to a jury instruction, we review the charge as a whole to ensure it was a fair and complete statement of the law." Trial courts possess great discretion in phrasing jury instructions so long as the law is clearly, adequately, and accurately presented to the jury. "[A] trial court need not accept counsel's wording for an instruction, as long as the instruction given correctly reflects the law."

*Commonwealth v. Towles*, 106 A.3d 591, 607 (Pa. 2014) (internal citations omitted), *cert. denied*, 135 S.Ct 1494 (U.S. 2015).

Biggs claims the court's identification charge failed to clearly inform the jury "there was no in court identification testimony presented by the Commonwealth." Biggs' Brief at 34. He explains:

Neither Lakeisha Jessie nor Kimberly Jessie made an in court identification of [Biggs] as the perpetrator of the crime. Only one witness testified before the grand jury even though both women gave signed statements to police identifying [Biggs] on the night of the incident. There were inconsistencies with witness testimony at trial and these inconsistencies are not merely questions of fact for the jury's resolution. They are properly presented to the jury for resolution only after it has been fully instructed by the trial court with regard to the manner in which it is to consider identification testimony and inconsistencies in the testimony.

Biggs' Brief at 34 (record citation omitted).

The trial court initially instructed the jury as follows:

Now, in their testimony, Lakeisha Jessie and Kimberly Jessie have identified the defendants as persons who committed the crime. In evaluating their testimony in addition to the other instructions I provided to you for judging testimony of witnesses,

- 12 -

you should consider the following factors: Did the witness have a good opportunity to observe the perpetrator of the offense; was there sufficient lighting for them to make their observation; where (sic) they close enough to the individual to note their facial and other physical characteristics as well as any clothing they were wearing; have they made prior identification[s] of the defendant as perpetrator of these crimes or at any other proceedings; was their identification positive or was it qualified by any hedging or inconsistencies; during the course of this case did the witness identify anyone else as [a] perpetrator.

In considering whether or not to accept testimony of Lakeisha Jessie and/or Kimberly Jessie you should consider all the circumstances under which the identification[s] were made.

* * * *

You cannot find defendant guilty unless you are satisfied beyond a reasonable doubt by all the evidence, direct and circumstantial, not only that the crime was committed, but that it was the defendant who committed it.

N.T., 1/28/2015, at 15-17. At the conclusion of the charge, the court conducted a brief sidebar discussion with counsel, and then returned with the following additional instructions concerning identification evidence:

And as for the instruction I gave you regarding identification testimony by the witnesses that I mentioned to you previously, I want to make it clear that that instruction which starts off with "in their testimony the witnesses have identified the defendant as [the] person who committed the crime", that refers to the previous identification done to the police and statements that were recorded by the police which were presented to the witness in court. And I'm referring to their previous identification.

That's what that instruction which deals with identification testimony that I read to you and it applies to the witness that I gave to you which previously were Lakeisha Jessie, Kimberly Jessie, and I believe, I just covered Lakeisha Jessie and Kimberly Jessie.

*Id.* at 29. After the jury retired for deliberations, Yates's attorney objected to the court's re-instruction, requesting the court specifically instruct the jury "there was no identification evidence presented from either of these two witnesses in court[.]" *Id.* at 32. Further, he complained the recharge was inadequate because it was up to the Commonwealth to prove "whether or not these two women identified these two defendants as the doers," and that "the jury has now been instructed that [the witnesses] did in fact do that at some point." *Id.* Biggs' attorney joined in Yates's objection. *See id.* at 33. However, the court determined the instruction was proper. *See id.* at 35.

We find no reason to disagree with the trial court's ruling. Although the court initially misstated that Lakeisha and Kimberly had identified Biggs and Yates in their trial testimony, its recharge made clear that the witnesses identified the co-defendants only in their prior statements to police. The court had earlier instructed the jury that it could accept those prior inconsistent statements in judging the witnesses' credibility, and could "regard [that] evidence as proof of the truth of anything that the witness said in the earlier statement." *Id.* at 21. Absent any citation to authority, Biggs seems to imply the trial court was required to explicitly instruct the jury that "there was no in court identification testimony presented by the Commonwealth." Biggs' Brief at 34. We disagree. Here, the court's instruction "clearly, adequately, and accurately" presented the law to the

jury. *Towles*, *supra*. That is all that is required, and Biggs is entitled to no relief on this claim.

In his final issue, Biggs challenges the discretionary aspects of his sentence. He argues the aggregate sentence imposed by the trial court was "unreasonable and manifestly excessive, not reflecting a proper consideration of the history, character and condition of [Biggs]." Biggs' Brief at 43. Moreover, Biggs claims the sentence was "impermissibly based solely on the nature and circumstances of the crime," factors which are already contemplated in the sentencing guidelines. *Id.* at 44. Specifically, Biggs contends the court failed to consider the factors set forth in 42 Pa.C.S. §§ 9721 and 9725 before imposing a sentence of total confinement, and failed to state sufficient reasons for the sentence imposed pursuant to Pa.R.Crim.P. 704(C)(2). *See id.* at 45-46.

It is well-established that "[a] challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. Hoch*, 936 A.2d 515, 518 (Pa. Super. 2007) (citation omitted). Here, Biggs complied with the procedural requirements for this appeal by filing a timely post-sentence motion for modification of sentence and subsequent notice of appeal, and by including in his appellate brief a statement of reasons relied upon for appeal pursuant to *Commonwealth v. Tuladziecki*, 522 A.2d 17 (Pa. 1987), and Pa.R.A.P. 2119(f). *See Commonwealth v. Edwards*, 71

A.3d 323, 329-330 (Pa. Super. 2013), *appeal denied*, 81 A.3d 75 (Pa. 2013).

However, the sentencing issues Biggs raises on appeal were not included in his motion for modification of sentence. Rather, in his post-sentence motion, Biggs simply listed several mitigating factors, and requested the court impose a new sentence "wherein the punishment for the Prohibited Possession of a Firearm shall run concurrently to all the remaining charges." Motion for Reconsideration of Sentence, 7/24/2015, at 2. It is well-established that a defendant must raise each specific sentencing claim in either his post-sentence motion or during his sentencing hearing in order to preserve the claims for appellate review. **Bullock**, **supra**, 948 A.2d at 826. Because Biggs did not give the sentencing court the opportunity to modify its sentence based on the reasons raised in his brief, the claims are waived on appeal.[10] **Id. See also Commonwealth v. Reeves**, 778 A.2d 691, 692-693 (Pa. Super. 2001).

_____

[10] We note that, even if we were to find Biggs' sentencing claims were preserved, and they presented substantial questions for appellate review, we would conclude no relief is warranted. The court's lengthy statement at Biggs' sentencing hearing reflects its consideration of the factors set forth in Section 9721 and 9725. **See** N.T., 7/22/2016, at 53-57. Moreover, in its opinion, the trial court further explained it was "understandably concerned with public safety and welfare" due to the "severity of the crime" and the co-defendants' "extreme recklessness … in opening fire in a well-populated residential area in a large city[.]" Trial Court Opinion, 6/27/2016, at 16. The Pennsylvania Supreme Court has stated: "As long as the trial court's reasons demonstrate that it weighed the Sentencing Guidelines with the
*(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/12/2017

---

*(Footnote Continued)* ─────────

facts of the crime and the defendant's character in a meaningful fashion, the court's sentence should not be disturbed." ***Commonwealth v. Begley***, 780 A.2d 605, 643 (Pa. 2001). Our review of the record reveals the trial court properly complied with this mandate.